[ S. F. No. 1501.  In Bank.—February 10, 1902.]

# HENRY SCHAAKE, Appellant, v. EAGLE AUTOMATIC CAN COMPANY et al., Respondents.

PLEADING—DEMURRERS TO COMPLAINT—CAUSE OF ACTION—DISALLOWANCE OF AMENDMENT—ABUSE OF DISCRETION.—If a complaint states a cause of action, it is an abuse of discretion, apparent upon the face of the record, to sustain demurrers thereto on any ground without granting leave to amend. The fact that the complaint had been once before amended does not justify a refusal of leave to amend in such case.

ID.—REFUSAL OF LEAVE IN ORDER SUSTAINING DEMURRERS—PRESUMPTION —EXCEPTION—REVIEW UPON APPEAL.—Where the order refusing leave to amend a complaint stating a cause of action was inserted in the order sustaining demurrers thereto, it cannot be presumed that the plaintiff asked leave to amend in advance of the ruling. The order is deemed excepted to by force of the statute, and the plaintiff is not required to move to vacate or modify it in order to have the abuse of discretion reviewed upon appeal.

ID.—DEMURRER FOR AMBIGUITY AND UNCERTAINTY—AMENDMENT CONTEMPLATED.—A demurrer for ambiguity and uncertainty is in aid of the pleading, and contemplates an amendment· in the particulars specified, unless, after several failures, it becomes evident that there. is a want of facts, or that the fault cannot be remedied.

ID.—UNCERTAINTY AS TO FACTS WITHIN DEFENDANT'S KNOWLEDGE— DEMURRER IMPROPERLY SUSTAINED.—Where no uncertainty appears other than as to facts within the knowledge of the defendants, they cannot complain thereof, and a demurrer for such uncertainty should not be sustained.

ID.—ACTION FOR ACCOUNTING—SUFFICIENCY OF COMPLAINT—INTEREST IN INVENTIONS—TRANSFER OF CORPORATE RIGHTS—ISSUANCE OF STOCK—PARTIES.—In an action for an accounting, to which two corporations and the stockholders of the first named were made parties defendant, a complaint showing that plaintiffs contracted with the first-named corporation to assign to it all patents and improvements upon machines invented by plaintiff, reserving a percentage upon all profits realized outside of the city and county of San Francisco, and that such corporation, in fraud of the plaintiff's rights, had transferred to the other corporation all of its property and all rights in such patents and improvements without reserve, to be used anywhere without limitation as to place, the sole consideration of which was the issuance of stock in the other corporation to certain named stockholders of the first-named corporation, states a cause of action for an accounting against the first-named corporation, to which such named stockholders and the other corporation were properly made parties defendant.

ID.—STOCKHOLDERS IMPROPERLY JOINED AS PARTIES—DISMISSAL.—Other stockholders of the first-named corporation, who received no part of the fund to which the plaintiff must look and to which he has a right to resort for the satisfaction of what may be found due upon the accounting, are not proper parties defendant, and the action should be dismissed as to them.

ID.—ILLEGAL TRANSFER OF RIGHTS—DIVISION OF CORPORATE ASSETS TO STOCKHOLDERS.—The transfer by a subsisting corporation of all its property and assets of every kind to another corporation in sole consideration of the issuance of the stock of the latter to stockholders of the former, is, in effect, an attempted distribution to them of all of the property and assets of the corporation making such transfer, in violation of positive statute law.

ID.—LIABILITY UPON ACCOUNTING—NOTICE OF PLAINTIFF'S RIGHTS.— Where it appears that both the corporation which took the transfer and the stockholders of the corporation which made it had notice of the rights of the plaintiff under the contract with the latter, they took their interests subject to any liability which may be found to exist against the corporation making the illegal transfer, upon an accounting with it under the contract. If the stockholders who received the consideration cannot make such liability good, the other corporation, which connived at the diversion of the fund applicable to pay the plaintiff's claim, ought to make it good.

ID.—CAUSE OF ACTION FOR ACCOUNTING—FIDUCIARY RELATION.—The patents and improvements assigned to the first-named corporation by the plaintiff, reserving an interest in certain profits which might be realized by the corporation, created a fiduciary relation, and rendered the corporation a trustee of the plaintiff as to his share of the profits realized; and he is entitled to an accounting thereof.

ID.—ESTOPPEL OF CORPORATION.—Such corporation, having transferred all of its property, and authorized the delivery of the proceeds of the sales to its stockholders, in violation of the statute, will not be heard to say that it received nothing for which it should account.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Edward A. Belcher, Judge.

The facts are stated in the opinion of the court rendered in Department Two.

J. C. McKee, and Frank M. Parcells, for Appellant.

E. S. Pillsbury, Olney & Olney, and F. D. Madison, for Respondents.

THE COURT.—This cause was originally submitted and decided in Department.

The opinion then filed contains a very full statement of the case and disposes of most of the points discussed by counsel. We adhere to the conclusions there announced, and readopt that opinion, except in so far as they are modified by what is here said.

We were in error in holding that the complaint was uncertain or ambiguous in the particulars pointed out in the opinion. Upon a more careful examination of its allegations, we perceive that they are to this effect: That 2,888 shares of the stock of the Pacific Sheet Metal Works, valued at $288,800, was the whole consideration given for all the property of the Eagle Automatic Can Company, and that $190,000 of this amount was given for machines, the cost price of which was $160,000. This presents no ambiguity or uncertainty, and there is no other ambiguity or uncertainty of which the defendants can complain. So far as there is any want of certainty in the complaint, it exists only in relation to matters peculiarly within the knowledge of the defendants.

The only fault of the complaint pointed out by the special demurrers is, that certain natural persons—stockholders of the Eagle Automatic Can Company—are joined as defendants, against whom there appears to be no cause of action. The plaintiff has a cause of action against the Eagle Automatic Can Company for an accounting. The stockholders of that company and others to whom the Pacific Sheet Metal Works issued stock in exchange for the property transferred by the Eagle Automatic Can Company are proper parties to this action, because they have received the fund to which the plaintiff must look, and to which he has a right to resort, for the satisfaction of what may be found to be due him from the Eagle Automatic Can Company. They are for that reason interested in the accounting, and ought to be bound by it. The Pacific Sheet Metal Works, for similar reasons, is a proper party. It connived at the diversion from the treasury of the Eagle Automatic Can Company of the fund applicable to the payment of plaintiff's claim, and if he cannot secure payment from those who received the consideration for the sale of the Eagle Automatic Can Company's property, the Pacific Sheet Metal Works ought to make it good.

So far as these parties are concerned, therefore, we hold

that there was no misjoinder. But as to those stockholders of the Eagle Automatic Can Company who are not alleged to have received any of the stock issued by the Pacific Sheet Metal Works, we think no cause of action is stated, and their demurrer on that ground should have been sustained.

This, however, did not justify the entry of a final judgment in favor of all the defendants. All that it authorized was a dismissal of those defendants, with a judgment for their costs, with leave to the remaining defendants to answer to the merits.

The judgment of the court, therefore, is not sustained by the record. It is accordingly reversed and the cause remanded, with directions to the superior court to dismiss the action as to those stockholders of the Eagle Automatic Can Company who are not alleged to have received any of the stock issued by the Pacific Sheet Metal Works, and with leave to the remaining defendants to answer to the merits.

The following is the opinion rendered in Department Two, February 20, 1901:—

THE COURT.—The other defendants are, the Pacific Sheet Metal Works (a corporation), Henry Pierce, Irvin Ayres, C. H. Watt, F. P. Howard, W. H. Talbot, A. L. Ayres, H. L. Hutchinson, E. B. Pond, William Rennie, J. M. Duke, W. P. Johnson, May Martin Philips, and J. W. Philips. These defendants, except the last two, were stockholders in the Eagle Automatic Can Company, and held all its stock (two thousand shares), and Pierce, Ayres, Watt, Howard, and Talbot were directors.

The amended complaint was demurred to by each of the corporations, and also by the individual defendants severally, and these demurrers were sustained without leave to amend, and plaintiff appeals from the judgment thereupon entered.

The amended complaint alleges, in substance, the following facts: On October 26, 1892, the said Eagle Automatic Can Company, a corporation engaged in the manufacture of tin cans by the use of certain automatic patented machines and processes, at the city and county of San Francisco, as party of the first part, entered into a contract with the plaintiff, as party of the second part, the substance of which is as follows: The second party agreed to serve as superintendent of the can factory of the first party for three years from the

date of the agreement, unless it should be sooner terminated according to the terms thereinafter set forth; that, in connection with his duties as superintendent, he should give due attention and care to perfecting, improving, and developing the various machines and machinery in use in the factory, and endeavor to improve said machines, and discover and invent others for use in said factory and business; that any and all inventions or improvements which had been or might be invented, discovered, or made by the second party during the time he had been, or should be, employed as superintendent should be perfected and completed by the second party, when so required by the first party, and applications for patents to be made when required by the first party, at its expense, and to be assigned to it upon request, and, whether patented or not, any and all of such improvements or inventions so made should "be and remain the sole property of the party of the first part during the entire life of the patent or patents, and entirely in the control of said party and for the exclusive use and benefit thereof; provided, that said party of the second part shall have an indefeasible interest in any and all of said inventions or improvements, whether patented or not, equivalent to twenty-five per cent of all profits accruing to or received by the party of the first part on account of the sale, use, or license to use, or on account of the manufacture to sell, use, or license to use, any of said inventions or improvements outside of the city and county of San Francisco."

In consideration of the foregoing the first party agreed to pay the plaintiff one hundred and ninety dollars per month during said period of three years, or until the agreement should be duly terminated according to its terms. The first party also agreed "to pay to the party of the second part ten per cent of the cost price of any and all machines or parts of machines or improvements on machines made, discovered, or invented by the party of the second part, as hereinbefore set forth, which said party of the first part shall cause to be used, or authorize the use of, outside of the city and county of San Francisco. Also, to pay to the party of the second part twenty-five per cent of all profits accruing to or received by the party of the first part on account of the sale, use, or license to use, or on account of the manufacture to sell, use, or

license to use, any of said inventions or improvements outside of the city and county of San Francisco." It was further agreed that in the event that the first party retired from the business of manufacturing tin cans, and for that reason had no further use for the services of the party of the second part, "then this agreement to cease and determine, and all future obligations hereunder shall be mutually canceled and annulled," and the first party released from payment of said salary, and the second party from the duties of superintendent or other service, and that inventions or improvements thereafter discovered should be for the exclusive use of the second party; "provided, that no rights, or interests, or obligations arising or originating before this agreement is terminated as herein set forth, shall be affected in any manner by the said termination hereof."

The plaintiff further alleges performance of his said contract, enumerates twelve inventions for which patents were issued, eight for which patents were allowed, but not yet issued, and seven improvements not patented, all of which were assigned and delivered to the said Eagle Automatic Can Company and solely used by it; that in October, 1895, the defendant the Eagle Automatic Can Company entered into an agreement with the Pacific Sheet Metal Works, a corporation, and a defendant herein, to sell to it all its capital, patents, property, rights, franchises, privileges, and assets owned, held, or controlled by the defendant the Eagle Automatic Can Company including all the inventions and improvements made by the plaintiff; that the same was so sold and delivered to be used outside of the city and county of San Francisco, "or anywhere, without reserve or limitation"; and that no consideration therefor was received by the Eagle Automatic Can Company, but that the Pacific Sheet Metal Works, with the knowledge and approval of all the defendants, issued 2,888 shares of its stock to the following named defendants: Henry Pierce, 700 shares; F. P. Howard, 354 shares; Irvin Ayres, 835 shares; C. H. Watt, 520 shares; H. L. Hutchinson, 340 shares; W. P. Johnson, 10 shares; and to May Martin Philips 129 shares; and it is alleged that said defendants gave no consideration for said stock, but received the same according to said agreement for procuring, consenting to, and ratifying said sale, and that thereby the Eagle

Automatic Can Company was deprived of all its property, capital, and assets, has ceased to do business, and is insolvent. It is then alleged that the cost price of the machines and machinery patented, invented, and improved by plaintiff and by him assigned and delivered to the Eagle Automatic Can Company, and by that company sold and delivered to the Pacific Sheet Metal Works, was $160,000, and the value of the stock issued therefor to the defendants above stated was $190,000.

It is then alleged that at the time of said sale ''several of the said machines and machinery were practically worn out and of little value, and were subsequently abandoned, so that the whole lot was sold for a sum far in excess of its value, and a very large profit, the exact sum being unknown to plaintiff, thereby accrued to said Eagle Automatic Can Company on account of said sale authorizing the use of said machines outside of the city and county of San Francisco, and said profit was received by said defendants in stock, as stated.''

It is then alleged that the value of the patents on machines and improvements discovered and invented by plaintiff, and delivered to the Eagle Automatic Can Company under said contract, was $74,000, the equivalent of which was paid to said defendants in stock, and which sum comprised the profits of the Eagle Automatic Can Company by the sale of said patents to be used outside of the city and county of San Francisco.

It is further alleged that said sale and transfer, the issuance of said stock, and the organization of said Pacific Sheet Metal Works to receive said property and assets, was in pursuance of a conspiracy theretofore entered into by and between all of the defendants, acting in concert, with the intent of defrauding plaintiff of his rights and interests in said property under said contract, and in pursuance thereof divided the proceeds and profits resulting from the consummation of said conspiracy,—to wit, ''2,888 shares of the capital stock of said Pacific Sheet Metal Works, as stated, of the value of $288,800,''—and that all of said parties were fully aware and had notice of the existence of said contract, and that, as a result of said sale, plaintiff was entitled to twenty-five per cent of the price paid for the patents sold and delivered to be used outside of the city and county of San Francisco, twenty-five per cent of the profits on the

machines and machinery so sold, and ten per cent on $160,000, the cost of the same, all with the purpose and intent to wrong and defraud the plaintiff.

That plaintiff has no means of ascertaining and is unable to state what part of said sum of $288,800 was paid for the use of said patents inside of the city and county of San Francisco and what part was for the use of said patents and machinery outside of said city and county; that the Pacific Sheet Metal Works and its licensees have used, and are now using, all the said patents and improvements outside of the city and county of San Francisco, "and nothing has been received by plaintiff for or on account thereof from said Eagle Automatic Can Company, or from any of said defendants, or at all. That by reason of the premises said defendants and each of them are indebted to plaintiff in a sum, the exact amount of which plaintiff is unable to ascertain, and therefore cannot state, but no part of which has been paid."

The prayer is,—1. "That an accounting be had, and the original cost, as well as the real value, at the date of the sale of the property and assets of said Eagle Automatic Can Company, in which plaintiff had an interest by reason of said contract, sold to said Pacific Sheet Metal Works, the price paid for the same, the proportion of the price paid for use and authority to use the said patents, machinery, and improvements outside of the city and county of San Francisco, and the profits accruing from the sale, be ascertained"; 2. That he have judgment against each for such sum as he may be entitled to, with interest, and for other proper relief.

Each of the corporations and the individual defendants demurred separately, specifying that the facts stated do not constitute a cause of action; that there is a misjoinder of parties defendant; that several causes of action are improperly united; that the complaint is ambiguous in certain particulars and unintelligible in others.

On November 10, 1897, the court made an order, reciting that the demurrers having been theretofore submitted and taken under advisement, "it is ordered that said demurrers be and the same are hereby sustained without leave to the plaintiff herein to amend the complaint on file herein," and directing judgment to be entered in favor of the defendant for costs.

Respondents contend, however, that the court did not err in sustaining the demurrers "without leave to amend." It is said that the complaint had been once amended, that the allowance of a further amendment was wholly within the discretion of the court below, and that there is nothing in the record which shows an abuse of discretion,—citing *Buckley* v. *Howe,* 86 Cal. 596, 605, where it is said: "The privilege of amending after trial of the issue of law raised by demurrer is not one of right, but one resting in the discretion of the trial court. (Code Civ. Proc., sec 472.) If the plaintiff desired to again amend, she should have applied to the court below, and if refused, exceptions should have been taken. It is too late to make the point for the first time in this court when nothing appears in the record to show an abuse of discretion."

We do not question that proposition; but if a complaint states a cause of action, the face of the record would "show an abuse of discretion" in sustaining a demurrer upon any ground without leave to amend. Accordingly, in *Buckley* v. *Howe,* 86 Cal. 596, 605, this court reviewed all the facts which were relied upon to show a cause of action, and concluded that she had failed to state facts sufficient to constitute a cause of action, and that the demurrer to her complaint was properly sustained. The order refusing leave to amend in this case was inserted in the order sustaining the demurrers, and was made at the same time. It cannot be presumed that the plaintiff asked leave to amend in advance of the ruling upon the demurrers, and the order denying his right to amend having been made, and excepted to by force of the statute (Code Civ. Proc., sec. 647), it could not be required that he should move to vacate or modify it in order to have the point reviewed upon appeal. Demurrers for ambiguity or uncertainty are in aid of the pleading, and contemplate an amendment in the particulars specified in them. We do not say that there is no limit to the right to amend when such demurrers are sustained, since several failures, perhaps but one or two, may develop a want of facts, or show that the fault cannot be remedied. The case of *Campbell* v. *Freeman,* 99 Cal. 546, cited by counsel for the Pacific Sheet Metal Works, has no application. In that case the fact that an application for leave to amend appeared only by the affidavit of counsel, and there was no bill

of exceptions or statement containing any action of the court thereon.

The contract between the plaintiff and the Eagle Automatic Can Company is set out in full in the complaint, and its principal provisions have been hereinbefore sufficiently stated. Under its terms the plaintiff had no profit or interest in his patents and improvements so long as their use was confined to the city and county of San Francisco. The contract contemplated, however, that these patented machines and improvements might be manufactured for sale or use under a license by other manufacturers outside of said city and county, and in such case he was to have the interest or profits therein specified.

It is also alleged that in October, 1895, the Eagle Automatic Can Company agreed to sell to the defendant the Pacific Sheet Metal Works "all the capital, patents, property, rights, franchises, privileges, and assets owned, held, or controlled by said defendant the Eagle Automatic Can Company including all the inventions and improvements discovered or made by the plaintiff, as hereinbefore set forth, and to be used outside of the city and county of San Francisco, or elsewhere, without any reserve or limitation whatever"; and that on or about February 12, 1896, the sale was consummated by the board of directors, with the approval of the stockholders. It is directly alleged that the Pacific Sheet Metal Works was by said sale authorized to use said property outside of said city and county, and it is also alleged that the Pacific Sheet Metal Works and its licensees have used, and are now using, the same outside of said city and county.

These facts, if proved, would entitle the plaintiff to recover the percentages stipulated for in the contract, at least as against the Eagle Automatic Can Company. It is true it is alleged that that corporation sold "all its property, capital, and assets of every kind and character, has ceased to do business, now is, and since said sale has been, entirely without assets and insolvent"; but that does not relieve it from liability for its debt. It is also true that it is alleged that it received no consideration from the Pacific Sheet Metal Works for the property it sold to the last-named corporation; but it is alleged that the Pacific Sheet Metal Works issued in pay-

ment therefor to the stockholders of the Eagle Automatic Can
Company 2,888 shares of its capital stock. But said corpora-
tion was not authorized to sell all its property for stock in
another corporation, to be issued, not to it, but to its stock-
holders, as we shall hereafter see; and, the facts being stated,
it is apparent that the pleader's statement, that the corpora-
tion received no consideration for the sale, is a conclusion of
law erroneously drawn from the facts alleged; and it further
appearing that the property sold was "authorized" by the
Eagle Automatic Can Company to be used outside of the city
and county of San Francisco, a cause of action against said
Eagle Automatic Can Company is stated.

We also think that the Pacific Sheet Metal Works and the
stockholders in the Eagle Automatic Can Company who re-
ceived any of the stock issued by the Pacific Sheet Metal
Works in payment for the property sold to it by the first-
named corporation are each proper parties to the suit, and
that the demurrer for misjoinder of parties should have been
overruled.

It is alleged that the Eagle Automatic Can Company sold
all its property, capital, patents, and assets to the Pacific
Sheet Metal Works, pursuant to an agreement, and that the
last-named corporation issued to Pierce, Howard, Ayers, Watt,
Hutchinson, Johnson, and May Martin Philips, 2,888 shares
of its capital stock in payment therefor, all of said persons,
except Mrs. Philips, being stockholders in the Eagle Auto-
matic Can Company, and that said corporation has ceased to
do business, and is insolvent. The corporation, however, has
not been dissolved, and the effect of this transaction was an
attempted distribution of all its property, capital, and assets
of every description to its stockholders, in violation of section
309 of the Civil Code, which provides, among other things, as
follows: "The directors of corporations must not make divi-
dends, except from the surplus profits arising from the busi-
ness thereof; nor must they divide, withdraw, or pay to the
stockholders, or any of them, any part of the capital stock,
. . . except as hereinafter provided. . . . Nothing herein
shall prohibit a division and distribution of the capital stock
of any corporation which remains after the payment of all its
debts, upon its dissolution, or the expiration of its term of
existence. . . ." Said corporation has not been dissolved, nor

has its term of existence expired. It is alleged to be a corporation, and its demurrer admits its existence as such.

Section 13 of the act of 1853 (Stats. 1853, p. 89) contained substantially the provisions now found in said section of the Civil Code, and those provisions were considered in *Martin* v. *Zellerbach,* 38 Cal. 300.[1] In that case two corporations, each owning in severalty several water-ditches, and having no interest in common, agreed to form a new corporation, to which each should convey all its property, the stock of the new corporation to be distributed in certain proportions to the *stockholders* of said two corporations. One of said original corporations was indebted to the plaintiff, who brought suit against it, attached the property formerly belonging to it, obtained judgment, and became the purchaser at execution sale, and obtained the sheriff's deed therefor. Before the plaintiff recovered said judgment the defendant recovered judgment against the new corporation, and sold the whole of the property held by the new corporation upon execution, and became the purchaser, and obtained a sheriff's deed therefor. Plaintiff sued to recover possession of the property which he had purchased, and the foregoing facts were set up as an equitable defense. The original corporations were the Eureka Lake Company and the Miner's Ditch Company, and the new corporation was named the Eureka Lake Water Company. It was the property conveyed by the first-named corporation that was in controversy. The court (after saying that the transaction as agreed upon and attempted to be carried out, if effectual in law, would of necessity have resulted in an alienation of the entire property and capital of the Eureka Lake Company, and that not a dollar would have remained to satisfy the demands of creditors) said: "The contract was that this stock [in the new corporation] was to be issued, and it was afterwards issued, directly to the *stockholders* of the Eureka Lake Company. It does not vary the principle that the consideration to be paid was stock instead of money. If the contract had been that, on the transfer of the property, the Eureka Lake Water Company would pay to the *stockholders* of the Eureka Lake Company one hundred thousand dollars in cash as the price of the property, the legal proposition in-

---

[1] 99 Am. Dec. 365.

volved would have been precisely the same as in this case. In either case the consideration would have been paid, not to the trustees, as a fund primarily liable to creditors, but to the *stockholders*, for their own use. . . . If this be not a violation of that provision of the statute which forbids the trustees 'to divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of the company,' we are unable to conceive a case which would.''

*Kohl* v. *Lilienthal*, 81 Cal. 378, involved a similar question. There two mining corporations, owning contiguous mining claims, formed a new corporation, to which they severally conveyed their mines, the new corporation paying therefor, in stock, one hundred thousand shares to each of the two corporations, one of which was organized under the laws of California. The plaintiffs, who were stockholders in said California corporation, brought suit against it and certain of its officers to compel a distribution of the stock received from the new corporation among its stockholders in proportion to the number of shares held by each. It was held that the stock issued by the new corporation in payment for the mining ground of the former corporation must be considered as part of the capital of such former corporation with which to carry on business, and cannot be distributed among the stockholders thereof until it ceases to exist, either by expiration of its term of existence or by the judgment of a court of competent jurisdiction. In this case *Martin* v. *Zellerbach*, 38 Cal. 300,[1] is cited and approved. See, also, *San Francisco etc. R. R. Co.* v. *Bee*, 48 Cal. 398, 405, a case of reincorporation, where it was said: ''It was certainly not competent to the members of that corporation to dissipate this fund and place it beyond the reach of creditors by merely going through the process of reincorporation, taking on a new corporate name, transferring the assets of the old corporation to the new one without consideration, and issuing the capital stock in the new corporation to the holders of the capital stock in the old corporation. This transaction involved a breach of positive statute law.''

It may be said that at the time the sale by the Eagle Automatic Can Company to the Pacific Sheet Metal Works was negotiated there was no indebtedness existing against the former corporation in favor of the plaintiff. But there was a

---

[1] 99 Am. Dec. 365.

subsisting contract existing between them under which a liability might be created, and was created, by the sale to the Pacific Sheet Metal Works. Of this contract the stockholders of the Eagle Automatic Can Company are charged with notice, since it was in effect their contract, executed by their board of directors; and it is alleged that the Pacific Sheet Metal Works purchased with notice of it, and therefore with notice that the sale authorizing the use of the machines outside of the city and county of San Francisco created a liability in favor of the plaintiff which the selling corporation, because of the sale, could not discharge, and therefore it took the property charged with that liability. Under these circumstances we think it clear that the Pacific Sheet Metal Works is both a proper and a necessary party to the action, and that the stockholders of the Eagle Automatic Can Company who received the stock alleged to have been issued to them in payment for the property sold to the Pacific Sheet Metal Works are proper parties.

It is also urged that the complaint does not show a case for an accounting. That it is a proper case for an accounting would seem to be clear. These patents and improvements were assigned to the corporation by the plaintiff, but reserving an interest in certain profits which might be realized by the corporation. The relation thus created was fiduciary, and as to plaintiff's share or part of the profits realized the corporation was a trustee. But counsel say that the complaint shows that no profit was realized or received by the Eagle Automatic Can Company to be accounted for. The corporation having sold the property and authorized the delivery of the proceeds of the sale to its stockholders, in violation of the statute, will not be heard to say that nothing was received for which it should account. Non-payment is sufficiently alleged.

As to the other grounds of demurrer little need be said. There are many faults in the complaint, but they are capable of amendment, and as to most of them what has been said will sufficiently indicate what they are. Faults consisting in ambiguities and uncertainties should be viewed, to a certain extent, in the light of the situation of the parties as to their knowledge of the facts,—that is, as to facts of which the plaintiff cannot, from their nature, have as full information as the defendant, less certainty is required in the allegations of the

complaint, partly because a desirable degree of certainty may be impossible, and partly because the facts being known to the defendant he is not likely to be embarrassed or injured.

The allegation that the Eagle Automatic Can Company received no consideration for the sale has been sufficiently noticed.

In paragraph IX it is alleged that the Pacific Sheet Metal Works issued stock to the defendants named "to the value of $190,000." It is alleged in paragraph VIII that 2,888 shares of its stock were issued to the persons there named, and in paragraph X it is alleged that said 2,888 shares were of the value of $288,800. All of said 2,888 shares were issued to said defendants, and this difference in statement as to the value begets uncertainty.

We think the judgment should be reversed, with directions to overrule the several demurrers for want of facts, and to sustain the demurrers for ambiguity and uncertainty in the particulars herein specified, with leave to the plaintiff to amend his amended complaint, if he shall be so advised, and it is so ordered.