[Civ. No. 4222.  First Appellate District, Division Two.—May 22, 1922.]

## JOSEPH B. DABNEY et al., Appellants, v. THOMAS B. KEY et al., Respondents.

[1] SPECIFIC PERFORMANCE — OIL LEASE — SURRENDER CLAUSE—WANT OF MUTUALITY.—A contract to make a lease of lands for the purpose of developing oil wells thereon is not specifically enforceable where the proposed lease reserves to the lessees the right to surrender the lease at such time as the lessees might see fit, but binds the lessors for a term of years.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

Robert M. Pease for Appellants.

Adolph B. Rosenfield for Respondents.

STURTEVANT, J.—The plaintiffs commenced an action against the defendants to enforce a specific contract to make a lease of certain lands for the purpose of developing oil wells thereon. To the amended complaint the defendants interposed a demurrer and a motion to strike. The motion was granted in part and denied in part. On July 14, 1921, the demurrer was sustained and the plaintiffs were given ten days to amend. They did not amend and on August 16th an order was made awarding judgment in favor of the defendants for their costs. The plaintiffs have appealed from the judgment and have brought up the judgment-roll.

The motion to strike contained eight different assignments. It was granted as to assignments 5 and 7 and was denied as to the others. The whole of the amended complaint clearly shows that it was the theory of the plaintiffs that if a lease were made the same would run to J. P. Dabney as lessee and that the negotiations were carried on, at least in part, by Clifford R. Dabney acting as the agent for J. B. Dabney. Paragraph III alleged: "That at the time of the execution of said agreement to lease said

J. B. Dabney, by and through said Clifford R. Dabney, paid to the defendants, and they still retain the sum of twenty-five ($25) dollars as consideration for the said agreement to lease.'' Acting on assignment number 5 the court struck out the words, ''by and through said Clifford R. Dabney.'' The expression was but a probative fact not necessary to the sufficiency of the pleading and was properly stricken out. In paragraph IV, among other things, the plaintiffs had pleaded: ''That the defendants then failed and refused to perform their said agreement to lease, and refused to execute to the plaintiffs or either of them any lease of said premises, and ever since have so failed and refused. [That defendants then repudiated their said agreement to lease, and declared to plaintiffs that the defendants were not bound by the same and would not perform.] That the plaintiffs and each of them duly performed all the conditions of said agrèement to lease on the part of them or either of them to be performed, and that the plaintiffs and either of them since the time of said tender and offer always have and has been ready and willing to execute the said lease.'' (Brackets ours.) Under assignment number 7 the court struck out the sentence inclosed in brackets. The sentence was clearly redundant and the court committed no error in striking it out. In the amended complaint the plaintiffs pleaded that the defendants are the owners of a certain tract of land in Los Angeles County; that on the fourteenth day of February, 1921, the defendants agreed in writing to execute a lease, ''to contain the following terms and conditions: (1) Drilling to be started on or before six months from and after the date thereof; (2) rent to be $10 per acre per month payable monthly in advance during said term of six months unless drilling is started sooner, in which event, rent is to cease; (3) royalty to be the one-sixth part of all oil or gas obtained, saved and sold on or from said lands; (4) the said lease to be in other particulars the same as any usual and customary oil lease.'' That plaintiffs paid $25 for the option; that on the sixteenth day of March, 1921, they tendered to the defendants a written lease which is set forth as an exhibit; that the defendants refused, and now refuse, to execute the lease so tendered and presented. They also plead ''that as to the defendants the considera-

tion for said lease (namely, the sum of $25 cash and of $10 per acre per month, rental therein specified and the royalties, to be paid by the lessee therein to the lessor, and the other terms and covenants of said lease), was and is just, reasonable and adequate.'' They further allege that the defendants threaten to develop or cause to be developed said lands for oil and gas to the injury of the plaintiffs, etc. The respondents interposed a demurrer which, among other things, pleaded that the amended complaint did not state facts sufficient to constitute a cause of action. The respondents support the order sustaining the demurrer on several different grounds. [1] Because of the view which we take of the case it will not be necessary to consider but one of those grounds. The respondents contend that the form of lease which was presented to the defendants and which the defendants declined to execute was not a mutual obligation. That in the lease as so drawn the plaintiffs did not bind themselves to drill, but, on the other hand, reserved the right to surrender the lease at such time as they might see fit, whereas, the same paper purported to bind the owners of the land ''for the term of twenty years from date hereof and as long thereafter as oil, gas, asphaltum or kindred substances are produced in paying quantities thereon, unless sooner terminated as herein provided.'' The obligation resting on the appellants is quoted and set forth by the appellants in their brief as follows: ''4. The drilling requirements of this lease shall be as follows:

''4-a. Within six (6) months from date of this lease, Lessee is to commence drilling operations on said premises, and will diligently prosecute the same with reasonable diligence and without interruption for a period of more than thirty (30) consecutive days at any time, Sundays, and holidays excepted, unless such delays are excused as hereinafter provided, to a depth of 3,000 feet, unless oil is found in paying quantities at a lesser depth. . . .

''4-e. Lessee may surrender this lease before or after the commencement of drilling, without liability for failure to commence or continue operations; but upon such surrender Lessee shall execute to Lessors and record a quitclaim deed to said premises. Cancellation and termination of lease shall be the only remedy for failure to commence or continue operations.''

In the case of *Sturgis* v. *Galindo,* 59 Cal. 28 [43 Am.
Rep. 239], the supreme court was considering a case in
specific performance. The instrument before the court pur-
ported to be a contract of sale of lands supposed to be
valuable as a coal mine. The purported contract contained
a surrender clause as follows: If defendant's assignors
"should at any time before the expiration of the time here-
inbefore *fixed for the completion of this contract, to wit, the
14th day of December,* A. D. 1867, become satisfied that it
was useless to further prospect said lands agreed to be con-
veyed for coal, then upon giving thirty days' notice to
said party of the first part, in writing, of their intention
to abandon said contract, then and thereafter this agree-
ment shall be void, and of no binding force or effect be-
tween the said parties or either of them." The trial court
had entered a judgment specifically enforcing the contract.
The supreme court reversed that judgment and in doing
so said: "It is, moreover, perfectly clear that a specific per-
formance of the contract could not have been performed at
the suit of Pacheco; for besides the difficulty of enforcing
the performance of personal services, the agreement con-
tained the express stipulation that if, at any time prior to
the period fixed for the completion of the contract, Brom-
ley and Jones should become satisfied that it was useless
further to prospect the land, they should have the right,
upon giving thirty days' notice to Pacheco of their inten-
tion so to do, to abandon the contract. 'It is a general
principle,' says Mr. Fry at section 286 of his work on
Specific Performance, 'that when, from personal incapacity,
the nature of the contract, or any other cause, a contract
is incapable of being enforced against one party, that party
is equally incapable of enforcing it specifically against the
other, though its execution in the latter way might, in itself
be free from difficulty attending its execution in the
former.' '' It is not claimed by the appellants that the
Sturgis case has been overruled, but the appellants ask this
court at this time to lay down a different rule so far as
oil leases are concerned. In their brief they contend as
follows: "Anomalous as it may seem at first, this apparent
one-sidedness is the only fair structure for such a con-
tract. And, the oil lease being the basis of the California
oil world, it follows that if this oil industry, if this tre-

mendous young industry which has been the very life and salvation of our great southwest these past three strenuous years, if this industry is to survive and is to continue to function and expand, it must be granted or confirmed the power to enforce and protect with all the vigor of our laws and judicial system these contracts which are its very foundation and strength and its only opportunity for service in fields as yet undiscovered.'' However desirable some other rule might be as applicable to this specific line of cases it would seem that such an argument should be addressed to the legislature and not to the courts.

We find no error in the record. The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.