[Civ. No. 247. Fourth Appellate District.—October 1, 1930.]

LEROY MOORE et al., Appellants, v. GEO. D. HERON et al., Respondents.

Preston & Turner and Clyde C. Downing for Appellants.

John L. Campbell for Respondents.

BARNARD, J.—This is an action for specific perform-ance. The plaintiffs, after alleging that Mary E. Heron is the owner of the land involved herein, allege that an agree-ment was entered into, reading as follows:

"Prospecting Permit.

"We, the undersigned, G. D. Heron and Mary E. Heron, husband and wife, owners of the real estate hereinafter de-scribed hereby grant to Leroy Moore, Oliver Marriott and associates the exclusive right to immediately enter on said premises and prospect for minerals with the following un-derstanding:

"First—If at any time within a period of 60 days from date said Marriott and Moore should discover mineral de-posits which in their judgment has commercial value and worthy of further development, then we agree in consider-ation of their efforts and expenditures in making such dis-covery, to execute and deliver to them a mining lease or contract giving them full right to ingress and egress on

said premises, the right to sink shafts or drive tunnels for development of said deposits, the right to erect all necessary machinery and equipment for properly mining and treating said ores and minerals, and all other rights and privileges usually *contained* in a mining lease in California Mining Districts.

"We represent that we are the owners of said premises in fee, including mineral rights.

"It is agreed that *Marrion* and Moore shall refill all holes made by them in their preliminary prospecting work.

"This permit shall include the right to quarry or mine lime or clay deposits if it should be determined that such deposits exist in commercial quantities.

"The royalty provided in said lease shall be 5% of the gross proceeds from sale of all minerals including lime or clay etc except in the event gold should be discovered the royalty shall be *10%* gross proceeds of all sales of gold.

"The period of said lease shall be for —— years or as long thereafter as ore or other products covered by this permit shall be produced in paying quantities.

"The premises covered by this permit are described as follows:

"The N. W. ¼ of Sec. 6 Twp. 2 S. Range 2 W. San Bernardino Co. Calif. containing 175 acres more or less.

"It is distinctly understood that this permit does not grant the right to prospect for or develop oil or other petroleum products.

"Witness our hands this 6th day of January, 1927.

"GEO. D. HERON.

"Accepted. LEROY MOORE.

"OLIVER MARRIOTT."

They further allege that through inadvertence this agreement was not signed by Mary E. Heron, but that she thereafter orally ratified and affirmed all of the provisions thereof; that within sixty days they expended the sum of $1500 in prospecting for ores and minerals upon the land in question, in accordance with the terms of the agreement; that they discovered a vein of gold and silver assaying $14.-22 per ton; that on or about March 1, 1927, they demanded of the defendants the execution and delivery of a mining lease in accordance with the terms of the agreement; and that compliance with their demand was refused by the de-

fendants. A general demurrer to the complaint was sustained by the court, without leave to amend. From the judgment which followed this appeal is taken.

Appellants, apparently following the arguments raised upon the hearing of the demurrer, urge that the agreement set up in the complaint is not void for want of mutuality; that the consideration was just and reasonable; and that the contract and lease described therein are sufficiently definite and certain to be specifically enforced.

 The courts will not compel the specific performance of a contract when its nature is such that the one seeking its enforcement could not himself be compelled to perform. (Civ. Code, sec. 3386; *O'Brien* v. *O'Brien,* 197 Cal. 577 [241 Pac. 861].) In *Poultry Producers, etc.,* v. *Barlow,* 189 Cal. 278 [208 Pac. 93], the court says: "The doctrine is elementary and impregnably fortified by authority that a contract cannot be specifically enforced unless this remedy is available to both parties. Equity will not enforce a specific performance of a contract when the party asking its enforcement cannot, from the nature of the obligation assumed, be compelled to perform on his part." And, also: "The remedy must be mutual, as well as the obligation, and when the contract is of such a nature that it cannot be specifically enforced as to one of the parties, equity will not enforce it against the other."

Appellants rely upon the contention that this rule does not apply in this case, for the reason that they have fully performed, and that this performance has removed any lack of mutuality theretofore existing. It has, of course, been held that where an original lack of mutuality has been removed at the time the action is brought, the contract may be specifically enforced. (*Sayward* v. *Houghton,* 119 Cal. 545 [51 Pac. 853, 52 Pac. 44]; *Spires* v. *Urbahn,* 124 Cal. 110 [56 Pac. 794].) The justice and reason behind such an exception to the general rule are fully apparent in cases where all, or substantially all, that was to be done by the party seeking the relief has been fully performed. Where a party has agreed to convey a right of way on condition that a railroad be built, the actual building of the road is certainly as beneficial to the land owner as an enforceable agreement to build the same. The situation is somewhat different in the case of a preliminary agreement, to

be followed by a lease, looking to the exploration or prospecting of land for oil or minerals, and in which the main purpose in view is the actual development of the land in that regard, and the removal therefrom of the oil or minerals when found. The case of *Dabney* v. *Key*, 57 Cal. App. 762 [207 Pac. 921], is a case somewhat similar in principle to the case at bar. In that case, the defendants had agreed in writing to execute a lease enabling the land to be prospected for oil. The defendants having later refused to execute such a lease, the action was brought to compel specific performance. The court denied this relief on the ground that the form of lease which was presented to the defendants, and which they refused to execute, was not a mutual obligation, in that the plaintiffs did not bind themselves to drill for oil on the land, but specifically reserved the right to surrender the lease at any time they saw fit, whereas the instrument purported to bind the owners of the land for the term of twenty years, and as long thereafter as oil should be produced in paying quantities.

In the instant case, it is not alleged that a form of lease was actually presented to these defendants, but it is alleged that the lease demanded and refused was to be in accordance with the terms of the agreement above set forth. While such a lease as is described in the agreement would not appear to contain a clause permitting its surrender at any time the lessee should see fit, that would undoubtedly be the legal effect of the whole lease. It is provided that the lease claimed shall give to the lessees certain rights which are mentioned, but nowhere is it provided that any obligations shall be assumed by the lessees. While the proposed lease gives them the right to enter the property and carry on mining operations, they do not agree to do so. If they should begin operations, they do not agree to continue them any designated time, nor even as long as they are profitable. Even the omnibus clause covering everything "usually contained in a mining lease in California" (whatever that may be), provides that the lessees shall be given all the rights and privileges known to the industry, but is absolutely silent as to any obligations upon their part. We are unable to find any provision for any right or benefit accruing to the lessors, which they might enforce. That the lessees might abandon the project at any

time, regardless of the interests or wishes of the lessors, appears just as certainly from the terms of this contract as it does from the lease tendered in the case of *Dabney* v. *Key, supra*. Even the prospecting permit puts no obligation upon the appellants, providing only that a lease may be demanded, not upon a certain result being obtained, but upon a contingency left entirely to their own judgment. Respondents would be utterly unable to specifically enforce anything against the appellants, either upon the prospecting permit or upon such a lease as is therein described.

The provision for a lease is included within the prospecting agreement and is an inseparable part thereof, the purpose of the entire agreement being not only to bring about a discovery of minerals in the land, but also to bring about the opening up of mines for the purpose of making such minerals available. Under such circumstances, we feel that the work done by the appellants as alleged in the complaint, is not such a full and substantial performance as to bring them within the exception upon which they rely. While the objects and purposes of the agreement were still far from accomplished, under the terms of the instrument, the respondents could neither compel appellants to accept a lease, nor to proceed with the work.

Nor can we consider the agreement in question as just and reasonable, within the meaning of section 3391 of the Civil Code, since it is so entirely one-sided that it cannot be enforced by the respondents. Neither before nor after they receive a lease do they agree to do anything. The real purpose of this agreement is not merely the discovery of minerals, but also the further development of the property. This real purpose must be considered. (*Los Angeles etc. Dev. Co.* v. *Occidental Oil Co.*, 144 Cal. 528 [78 Pac. 25].) Not only is the agreement here unenforceable for lack of mutuality, but it calls for personal services, the right to which could not be enforced by the respondents. (*Sturgis* v. *Galindo*, 59 Cal. 28 [43 Pac. 239].) As was said in *Pacific Ry. Co.* v. *Campbell-Johnston*, 153 Cal. 106 [94 Pac. 623, 628], equity ''will not decree specific performance when the duty to be performed is a continuous one, extending possibly over a long period of time and which, in order that the performance may be made effec-

tual, will necessarily require a constant personal supervision and oversight of it by the court''.

It is next urged that the agreement in question is sufficiently definite and certain to permit of specific performance. This argument is addressed to the duration of the proposed lease, under the provision that it shall be for —— years, or as long thereafter as the minerals in question shall be produced in paying quantities. If it be assumed that such a clause is not in itself void for uncertainty, when it is remembered that the lessees are not bound for any length of time, the duration of the lease could not well be made more uncertain. There is also the provision that the lease shall contain all the other rights and privileges usually contained in a mining lease in California. This agreement is not only indefinite and uncertain, but it would be practically impossible for any court to say what the terms of the lease should be. Such an agreement cannot be specifically enforced. (Civ. Code, sec. 3390, subd. 6; *Stanton* v. *Singleton*, 126 Cal. 657 [47 L. R. A. 334, 59 Pac. 146].) Neither the terms of the lease nor the precise acts which are to be done by the respective parties thereto are clearly ascertainable. (*Berry* v. *Moulie*, 180 Cal. 137 [179 Pac. 686].) In the case last cited, the court said: ''The secrets remained within the breast of the defendant, and he alone would know whether or not he had complied with the judgment which required him to deliver the formulas.'' In the instant case, were the court to order a delivery of the lease described, whether or not the order was complied with, would not even be known to the respondents.

Since we are of the opinion that the complaint fails to set forth a contract which may be specifically enforced, it is unnecessary to consider the other points raised.

The judgment is affirmed.

Marks, J., concurred.

Cary, P. J., being absent, took no part in this decision.