[Civ. No. 2207. Fourth Appellate District.—May 5, 1938.]

JAMES P. GEORGE, Appellant, v. F. F. WESTON, Respondent.

Joseph A. Brown and A. E. Cross for Appellant.

W. B. Beaizley and Arthur W. Bolton for Respondent.

HAINES, J., *pro tem.*—This action is prosecuted on the part of the plaintiff and appellant to obtain specific performance of what is described as "Agreement to Lease for Oil and Gas". The instrument involved is unilateral in form, being signed by the defendant but not the plaintiff and, except for the property described and an attached notarial acknowledgment is in words and figures following:

"Agreement to Lease for Oil and Gas.

"I, the undersigned, for and in consideration of $100.00 to me in hand paid, receipt whereof is hereby acknowledged, do give and grant unto James P. George, his heirs or assigns, for a period of 30 days from and after the date hereof, the sole and exclusive right of leasing for the purpose of operating for oil and gas the lands particularly described as follows, to-wit: (Here follows a description by government subdivisions of land in Kern county, claimed in appellant's brief to amount to 1,040 acres.)

"Upon demand by the said James P. George, or his heirs or assigns, within the time above specified, I agree to execute an oil and gas lease upon the form known as the 'Oil Publishing Form No. 86–C' and deliver same to Bakersfield Abstract Co., at Bakersfield, California, to be held as an escrow with instructions to deliver said lease to the assigns of James P. George upon payment of the sum of $940.00, said lease to remain in escrow a sufficient length of time to permit the said Title Company to render a report showing the conditions of the title to said property.

"Said lease to provide for drilling operations to be commenced within half year from date of lease, but lessee may extend time for commencing drilling operations for an additional period of five years by paying to the lessor the sum of $1.00 per acre per year in advance, drilling to a depth of —— feet, one well to each twenty acres, one-sixth royalty to lessor, lessee to pay five-sixths of increase of taxes. I warrant said lands to be free and clear of all encumbrances except usual country rights of way.

"In witness whereof, I have hereunto set my hand this 21st day of August, 1936. (Signed) F. F. Weston. Witness: (Signed) R. B. Ellis."

The original complaint alleges the execution and delivery by defendant to plaintiff of this writing, and request by plaintiff to defendant to execute to him an oil lease in the form therein contemplated, but states that on September 10, 1936, the defendant repudiated the agreement and gave plaintiff notice that he would not carry it out, and asserts that the plaintiff is able, ready and willing to perform its terms on his part and has so advised the defendant. It is further alleged that "said agreement for lease is in all respects fair, equitable and just", that the defendant has filed a document in the recorder's office of Kern County "con-

stituting a cloud upon the title of said agreement''; that it ''is necessary that the title of plaintiff with respect to said document and said agreement to lease said real property be quieted . . . ''; that the plaintiff has no plain, speedy or adequate remedy at law, and that it is impossible to fix the damages from the breach of the agreement and that only by specific performance can plaintiff have full relief. A decree is sought, requiring the defendant to carry out the agreement ''by executing to the plaintiff herein an oil lease in accordance with the terms of said agreement'' and ''that title under said lease to said real property be quieted . . . ''

To this complaint a demurrer was sustained without leave to amend and judgment entered in defendant's favor accordingly. Thereafter the plaintiff moved the court to vacate the judgment and permit him to file an amended complaint. The proposed amended complaint was intended to eliminate any defects in the original pleading and, to that end, it set out by way of an exhibit what is stated to be the form No. 86–C of lease referred to as to be executed by the defendant. This document is too long to be here reproduced and we shall content ourselves with referring to certain of its provisions. It purports to bear date August 27, 1936. It is stated to be ''for and in consideration of the sum of 1040 Dollars lawful money of the United States of America to the Lessor paid and for other valuable considerations, . . . and in consideration of the covenants and agreements hereinafter contained by the Lessee to be kept and performed''. It grants to the lessee, its grantees, successors and assigns (the lessee, though a natural person being referred to as ''it'') the exclusive right to drill for and produce ''oil and gas, asphaltum and other hydrocarbons'' on the land referred to, stated to contain 1,040 acres, more of less, ''for a term of twenty (20) years from and after the date hereof, and so long thereafter as oil or gas or casinghead gas or other hydrocarbon substances or either of them is produced therefrom''. The lessee is to pay as royalty to the lessor 1/6 of the proceeds of the oil produced, after making certain specified adjustments, and of the gas produced and saved. The above-mentioned considerations are to include all rental for the first six months of the term but thereafter the lessee is annually to pay or tender to the lessor ''in advance as rental'' $1 per acre ''for so much of said land as may then still be

held under this lease until drilling operations are commenced or this lease terminated as herein provided''. The lessee ''agrees to commence drilling operations within 5½ years from the date hereof . . . and to prosecute the same with reasonable diligence until · oil or gas is found in paying quantities, or to a depth at which further drilling would in the judgment of the Lessee be unprofitable; or it may at any time within said period terminate this lease and surrender said land as hereinafter provided''. The lessee ''may elect not to commence or prosecute the drilling of a well on said land as above provided and thereupon this lease shall terminate''. If the lessee does drill on the land and the first well fails to produce oil or gas in paying quantities then such lessee is, within six months from the completion or abandonment of the first well, to commence drilling another. ''Lessee may at any time quitclaim this lease in its entirety, or as to part of the acreage covered thereby, with the privilege of retaining twenty (20) acres surrounding each producing or drilling well, and thereupon Lessee shall be released from all further obligations and duties as to the area so quitclaimed and all rentals and drilling requirements shall be reduced *pro rata*.''

In addition to setting out as an exhibit this form of lease, the proposed amended complaint amplifies the allegations of the original pleading in various particulars. Thus it is, *inter alia,* stated that the royalty of 1/6 of the proceeds of the exploitation is in excess of the usual proportion which is stated to be 1/8; that generally the terms of the proposed lease are usual, standard and customary in California and known to be such to defendant; that the document complained of as having been filed by defendant with the recorder of Kern County and to be a cloud on plaintiff's title consists of a written repudiation by the defendant of the agreement, which must be cleared up to make the plaintiff's right to receive the lease merchantable.

The court refused to vacate its judgment and denied the plaintiff's application to file this amended complaint.

Thereupon, the plaintiff filed two separate appeals, one from the judgment and the other from the order refusing to vacate the judgment and refusing to permit the amendment. Both appeals are presented upon the same briefs and are here for determination. The complaint as originally

filed does not set out any lease. ■ It sets out only the agreement to execute a lease "for the purpose of operating for oil and gas" certain described lands, and asks a decree requiring the specific performance of that. The agreement, as already seen, is, upon the demand of the plaintiff or his heirs or assigns, within the specified time, "to execute an oil and gas lease on the form known as Oil Publishing Form, No. 86–C". It does not appear from this pleading what are the contents of that form nor, except for the meager statement contained in the document which is set out and which we have hereinbefore quoted, does it appear what the defendant as signer of that document intended that the lease should contain. It is indeed urged that that is certain which can be made certain. But the original complaint does not allege that the said "Form No. 86–C" is one in general use in the trade, but even if it did the court could hardly take judicial notice of its provisions or requirements. There is, therefore, in the complaint, as originally presented, nothing from which the court could reasonably conclude either that the proposed lease would be fair or unfair to the defendant and although the complaint does assert that the "agreement for lease is in all respects fair, equitable and just" it is settled that this assertion is but a conclusion and that the facts relied on to warrant it must be set out. (*Agard* v. *Valencia,* 39 Cal. 292, 302; *White* v. *Sage,* 149 Cal. 613, 616 [87 Pac. 193]; *Herzog* v. *Atchison, Topeka & Santa Fe Railway Co.,* 153 Cal. 496, 500, 501 [95 Pac. 898, 17 L. R. A. (N. S.) 428]; *Smiley* v. *Read,* 163 Cal. 644, 648 [126 Pac. 486]; *Joyce* v. *Tomasini,* 168 Cal. 234, 237 [142 Pac. 67]; *Magee* v. *Magee,* 174 Cal. 276, 281 [162 Pac. 1023]; *Salisbury* v. *Yawger,* 184 Cal. 783, 795 [195 Pac. 682]; *Martin* v. *Condrey,* 13 Cal. App. 618, 620 [110 Pac. 457]; *Porter* v. *Anderson,* 14 Cal. App. 716, 721 [113 Pac. 345]; *Andersen* v. *Charles,* 52 Cal. App. 290 [198 Pac. 641]; *Rittigstein* v. *Dignan,* 122 Cal. App. 357, 359 [9 Pac. (2d) 856].) ■ By the same token, in consequence of the failure of the original complaint to set out said form No. 86–C, it could not be ascertained therefrom whether the agreement sued on possessed or did not possess the element of mutuality essential to the right to require its specific performance. For both of the reasons given we think that there was no cause of action originally stated. ■ In various particulars, moreover,

the specifications of uncertainty contained in the demurrer appear to us to have been well founded. Since the agreement pleaded referred to another writing, that is form No. 86–C, the agreement itself cannot be said to have been necessarily uncertain. For aught that appeared in it, that writing, —form No. 86–C,—might have supplied all of the elements necessary to give it certainty. In failing, however, to show that such was the fact, the complaint as originally filed was undoubtedly uncertain. The demurrer was properly sustained.

We think, however, that the trial court fell into error in entering judgment for the defendant without affording the plaintiff opportunity to amend. It appears that counsel for plaintiff were not present when the demurrer was sustained, but had submitted the matter on a memorandum of authorities. From an inspection of the original complaint it could not be determined that the plaintiff would be unable to so amend it as to state a cause of action and eliminate the uncertainty complained of. The plaintiff was not required to apply to amend his complaint in advance of the ruling on the demurrer. (*Schaake* v. *Eagle etc. Can Co.*, 135 Cal. 472, 480 [63 Pac. 1025, 67 Pac. 759].) The trial court should, therefore, have allowed an amendment.

Manifestly, the propriety of the court's further action, however, in refusing to vacate the judgment or to permit the filing of the amended complaint depends on the sufficiency of the case stated in this latter pleading. Its sufficiency to support any decree for specific performance is attacked on various grounds. It is said that the proposed lease, as now disclosed, would lack the mutuality required by section 3386, Civil Code, which reads as follows:

"Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance."

Respondent's counsel argue that there is such want of mutuality because appellant cannot be compelled specifically to perform, in that "he can surrender the lease at will and is not obligated to perform any act and because any performance by him involves the drilling of oil wells which re-

quire the performance of personal service and successive acts".

In support of the claim that the permission to surrender the lease or any part of the leased land at any time is enough to destroy the element of mutuality the cases principally relied on are *Sturgis* v. *Galindo,* 59 Cal. 28 [43 Am. Rep. 239]; *Dabney* v. *Key,* 57 Cal. App. 762 [207 Pac. 921], and *Sheehan* v. *Vedder,* 108 Cal. App. 419 [292 Pac. 175]. *Sturgis* v. *Galindo, supra,* involved a contract whereby the owner of land agreed to sell the same to two other parties who were experienced prospectors. The latter were, as part of the purchase price, to prospect for coal and if it were found, to organize a corporation to exploit it in which the vendor was to have a certain block of stock. By the terms of the contract the vendees if, before the time fixed for its performance, they became satisfied that it was useless to further prospect there for coal, were entitled to abandon the arrangement. The vendees did not in fact perform their covenants at all but undertook to assign an interest in the contract to third parties who sued the vendor for specific performance. The court held that the suit must fail for want of mutuality, both because of the conditional right given to the vendees to abandon the property and also for the reason that it contemplated the rendition by the vendees of personal services involving the use of their own skill as prospectors which there would have been difficulty in compelling them to render, even if they had not disabled themselves from doing so by their attempted conveyance of interests to others. In *Dabney* v. *Key, supra,* following the authority of *Sturgis* v. *Galindo, supra,* it is held in terms that a contract to make a lease of land for the purpose of developing oil wells thereon is not specifically enforceable when the proposed lease reserves to the lessees the right to surrender it at such time as the lessees see fit, but purports to bind the lessors for a term of years. In *Sheehan* v. *Vedder, supra,* in which this court affirmed a judgment of the same trial court from which the present appeal is taken, an oil drilling contract contained a clause to the effect that:

"The party of the second part at any time before or after the discovery of oil on said premises may quitclaim said property or any part thereof to the parties of the first part, their successors or assigns, and thereupon all rights and obli-

gations of the parties hereto, one to the other, shall . . . cease and determine as to the premises quitclaimed.''

This court, relying on *Sturgis* v. *Galindo, supra,* and *Dabney* v. *Key, supra,* held that the lessee's right to abandon robbed the contract of mutuality and made it impossible to require its specific performance and that, in these circumstances it afforded no defense to an action to quiet title brought by the lessors. A somewhat similar situation was considered and a like view taken of the matter by this court in *Moore* v. *Heron,* 108 Cal. App. 705, 710 [292 Pac. 136].

It is the claim of appellant's counsel that so far as the destruction of mutuality by a right reserved to the lessee to surrender the lease is concerned the four cases last mentioned have been overruled by the Supreme Court in *Callahan* v. *Martin,* 3 Cal. (2d) 110 [43 Pac. (2d) 788, 101 A. L. R. 871], and *Standard Oil Co.* v. *J. P. Mills Organization,* 3 Cal. (2d) 128 [43 Pac. (2d) 797]. We are unable to find in these decisions anything that lends even color to that view. The facts in brief in *Callahan* v. *Martin, supra,* were that the land involved had been owned by one Gonzales who had executed an oil lease thereon wherein certain royalties were reserved. While this lease was in effect Gonzales and wife executed a conveyance purporting to be in perpetuity to the defendants Martin of ''three per cent (3%) landowner's royalty, being three per cent (3%) of all oil, gas and other hydrocarbon substances and/or minerals produced, extracted and saved on the following described property'' (followed by its description). The lessees under the oil lease, after Gonzales and wife had made this conveyance to the Martins, threw up their lease and quitclaimed all their rights under it to Gonzales from whom, by subsequent mesne conveyances, the plaintiff Callahan obtained such title as Gonzales still had to convey. Callahan, as owner in fee, then sued the Martins to quiet title, apparently on the theory that their rights were terminated with the termination of the lease. A judgment in his favor was reversed. The Supreme Court, in discussing the oil lease, after reviewing certain authorities, used the following language especially relied on for appellant here:

''That the lessee has a vested estate in the land prior to production of oil, and although the lease contains provisions for forfeiture upon failure to discover oil, or for breach of

covenants of the lease, and although the rights granted are in consideration of rent and royalty to accrue, rather than upon a cash consideration paid in advance, is established by the above-cited cases. (See note, 3 A. L. R. 378, as to effect of surrender clauses.) Under an ordinary lease of surface rights, with provision for rentals to accrue, a leasehold estate vests in the lessee, although the lease contains provision for forfeiture upon conditions subsequent.''

To point out the inapplicability of.this language to the instant situation it is only necessary to observe that there is no analogy at all between a lease that is perfectly valid in itself but subject to conditions subsequent that may at some future time bring it to an end and an instrument that so far lacks mutuality that it can be terminated at any time by the lessee under it. What the court was really concerned with in *Callahan* v. *Martin, supra,* was not primarily the leasehold there incidentally mentioned but the circumstance that Gonzales as owner of the fee had, with his wife. granted to the Martins a right, not, like the present form of lease, for a mere term, but in perpetuity, to a share in the oils, gases and other hydrocarbons to be extracted from the land. What was chiefly under discussion was the sort of an estate conveyed to the Martins and it was held to amount to an incorporeal hereditament in the nature of a servitude in gross upon the land and as such to be real property. The court, *inter alia,* said:

''That rights in and to land, though they are embraced within the definition of an incorporeal hereditament, constitute a limited interest or estate in land, is generally recognized. . . . Where this limited interest is to endure in perpetuity or for life, it is a freehold interest, and real property or real estate, as well as an estate in real property. But, where it is for years, although an interest in land or in real estate, it is not real estate, but a chattel real, in like manner as a lease for years.''

It is manifest that this discussion has no application to the case at bar. In our view, the discussion in *Standard Oil Co.* v. *Mills Organization, supra,* is equally remote from anything here involved.

 Respondents, as has been seen, also claim that the proposed lease undertakes to obligate appellant to perform personal services and, since this performance cannot be de-

creed, that it, in that respect also, lacks mutuality, citing, *inter alia, Los Angeles etc. Co.* v. *Occidental Oil Co.,* 144 Cal. 528 [78 Pac. 25]. In this contention respondent is on less solid ground. In *Los Angeles etc. Co.* v. *Occidental Oil Co., supra,* mutuality was, indeed, held to be, for this reason, absent, but there the personal services to be rendered by one Martin, including his obligation personally to see to organizing a proposed corporation for the contemplated exploitation, as well as to see that various rights were gotten together and vested in it, were involved. In the instant case the agreement runs not only to plaintiff but to his heirs and assigns so that it is clear that there is no question of a requirement of the personal services of any particular individual. Neither do we think the respondent right in claiming that the specific performance sought is of a succession of different acts. It is of one act—the act of executing a lease in the agreed form.

However, for the reasons hereinbefore given, the arrangement as now set out in the proposed amended complaint and the exhibit thereto must be held to lack the mutuality necessary to warrant a decree for its specific enforcement. In these circumstances it seems to us unnecessary to discuss respondent's further claims that the consideration does not appear from the amended complaint to be adequate or just and reasonable within the meaning of section 3391, Civil Code, or that there are still such uncertainties in the proposed lease as ought to render it unenforceable.

Since the filing of the amended complaint could do appellant no good it would be futile to reverse the judgment or the order refusing to vacate it and be futile to permit the amended complaint to be filed. The judgment and order appealed from are, therefore, both affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 1, 1938.