[L. A. No. 3254. In Bank.—October 5, 1914.]

## JOHN H. HOBBS, Appellant, v. D. A. DAVIS et al., Respondents.

MINES AND MINERALS—INSPECTION OF PROPERTY—RIGHT OF STOCK-HOLDER TO MAKE.—A stockholder in a mining corporation is entitled to inspect the mining property of the company, and this includes the right to be accompanied by an expert.

ID.—CONTRACT TO PURCHASE MINING STOCK—SPECIFIC PERFORMANCE—SUFFICIENCY OF COMPLAINT.—In an action by a purchaser of stock to enforce specific performance of the contract of sale, which makes time of the essence and provides for periodical payments, the complaint fails to state a cause of action if, after alleging, as an excuse for the failure of the plaintiff to make the payments as

provided, that the defendant in conspiracy with the other directors of the company prevented the plaintiff's engineer from making an examination of the mine, which examination was necessary to enable him to obtain funds wherewith to make the payments, it alleges nothing from which it can be inferred that the plaintiff was unable to pay the comparatively small amount which was called for as the first payment or that the defendants prevented him from making such payment and thereby put him in default.

ID.—CONTRACTS—MAKING PAYMENTS—TIME AS ESSENCE.—Provisions of a contract calling for payments strictly at a time specified cannot be applied where the efficient cause of the failure of the party seeking specific performance to comply strictly and literally with the contract was the conduct of the other party; but in the present case the conduct of the defendants was not the efficient cause of the plaintiff's default in making his first payment.

ID.—UNREASONABLENESS OF CONTRACT—INADEQUACY OF CONSIDERATION. A contract which does not appear just and reasonable, or founded upon an adequate consideration, will not be specifically enforced. Hence specific performance cannot be had of a contract for the sale of mining stock which fixes a grossly inadequate price.

ID.—PLEADING—MISJOINDER OF PARTIES AND CAUSES OF ACTION.—If the complaint in an action for specific performance, brought by the buyer of mining stock against the seller, the corporation and its directors, is treated as a complaint for damages for breach of contract, it is subject to demurrer for improper joinder of defendants, and for improper joinder of causes of action affecting some, but not all, of the defendants.

APPEAL from a judgment of the Superior Court of Los Angeles County.   W. M. Conley, Judge presiding.

The facts are stated in the opinion of the court.

J. W. McKinley, H. L. McNair, Thomas Bryant, and Nye & Malburn, for Appellant.

Hunsaker & Britt, C. J. Willett, and N. P. Moerdyke, for Respondents.

THE COURT.—A rehearing of this case on appeal was ordered so that we might further examine the opinion of the district court of appeal. Some of the members of this court thought that the conduct of the vendor in preventing the vendee from examining the mine amounted to a violation of the agreement, upon the principle that written into every contract is the stipulation that the vendee may have all of his lawful rights

and may exercise them in relation to the subject matter of the agreement. A further study of the case and of the opinion of the learned district court of appeal of the second district, written by Mr. Presiding Judge Conrey, convinces us that the above stated principle was considered and observed by that court in its decision. But, even if we should eliminate from the case the discussion with reference to the allegations that plaintiff was excused from strict compliance with the contract in the matter of making payments on the purchase price of the stock at the dates specified in the writing, still we must hold that the demurrer was properly sustained because the pleading failed to allege facts showing that the contract was just and reasonable and founded upon an adequate consideration, and because, assuming that a cause of action for damages was stated, the complaint was demurrable for the reasons set forth in the last paragraph—3—of the opinion of the district court of appeal. We adopt that opinion, which is as follows:

"Demurrers of the defendants to the second amended complaint in this action were sustained without leave to amend, and thereupon the action was dismissed. The plaintiff appeals from the judgment.

"Plaintiff seeks a decree for specific performance of a contract for the sale to him by the defendant Davis of certain shares of stock in the Tom Reed Gold Mines Company, a corporation; and judgment for damages, if for any cause such specific performance cannot be had according to law. The contract in question, as well as a prior option hereinafter mentioned, was made between defendant Davis and one H. E. Fluke; but it is alleged that in all of the proceedings Fluke was acting as agent of the plaintiff, and that Fluke has assigned to plaintiff his interest in said contracts. On July 29, 1910, on payment of one thousand dollars, an option in writing was executed between Davis and Fluke giving Fluke the right during the period of thirty days to purchase said stock at a stipulated price, but did not bind Fluke or the plaintiff to complete the purchase. On August 25, 1910, a written contract was executed between the same parties for the sale of the same stock at the same price, and therein it was specified that Fluke agreed to buy the shares of stock and pay the purchase price in specified installments, payable successively as follows: Twenty-five thousand five hundred dollars on or before September 2d, one hundred and two thousand dollars

on or before October 2d, and one hundred and twenty-seven thousand five hundred dollars on or before November 1, 1910; the vendor acknowledging receipt of one thousand dollars on the first installment. Time was specified to be of the essence of the contract, and all sums paid on the contract were to be forfeited in case of failure of the purchaser to perform his agreement. Nothing was paid on the contract except the first one thousand dollars. No offer to perform by paying the contract price, or any further portion thereof, was made until at least as late as March, 1911. The contract price amounted to about $1.23 per share, and it is alleged that the reasonable value of said stock on September 2, 1910, was, and ever since has been, not less than three dollars per share.

"It is manifest that upon these facts alone the complaint could not state a cause of action. Assuming everything else in favor of the plaintiff, it would still be necessary that the plaintiff furnish a valid excuse for his failure to make the payments at the times named in the agreement. This he has attempted to do as follows: It is alleged that on the day prior to the date of making said contract of August 25, 1910, the plaintiff informed the defendant Davis that he had procured persons who were ready, able, and willing to furnish the money necessary for the purchase of said shares of stock; that the plaintiff also would join with said persons and furnish a portion of the said purchase money; but that said persons were unwilling to proceed with the matter unless time should be allowed in order to permit an examination of the mine of the defendant corporation to be made by plaintiff's engineer; nor unless certain discoveries of ore alleged to have been made since a prior examination made by the plaintiff in April, 1910, should, upon such new examination, be verified by said engineer; 'and said defendant Davis, at said interview, said that he as a single director of the defendant company, had no right to agree on behalf of the said company to an examination of said mining property by plaintiff's engineer, but that plaintiff as a stockholder of the defendant company undoubtedly had the right to examine said property, that such right had never been questioned and had been repeatedly exercised and that there should be no objection raised to the making of such examination; and plaintiff said to defendant Davis that his engineer was ready to proceed at once to said mine for the purpose of examining the same.' The plaintiff

then was, and for some time past has been, a stockholder in said corporation. Neither plaintiff nor said Fluke at that time possessed sufficient ready cash to pay the entire purchase price of said stock at the times fixed by said contract and depended wholly for procuring the greater part of said money upon the said arrangements made with other persons to furnish the money, all of which was well known to defendant Davis. It is then alleged that defendant Davis, contriving to fraudulently defeat said sale and purchase and to prevent the plaintiff from obtaining the money necessary for the consummation by plaintiff of said purchase, attended a meeting of the board of directors of the corporation, 'in the latter part of August, 1910,' and procured and voted for a resolution by the board of directors forbidding the examination of the underground workings of said mine by the engineer selected by plaintiff, 'and postponing such examination to an indefinite future time'; that four other of the defendants, who were then directors of the corporation, combined and conspired with Davis, by preventing the examination of said mine by plaintiff, and by said resolution, to defeat the consummation of plaintiff's said contract and to divert the purchase of said shares from plaintiff to themselves. On August 25, 1910, plaintiff was advised by letter from the secretary of the corporation to plaintiff's engineer, and received by him after the making of the contract, of the action taken by the board of directors and of the company's refusal to permit at that time an examination of said mine to be made. The plaintiff immediately protested and represented to defendants his readiness to make immediate examination of the mine and to complete the purchase and pay the purchase price and the impossibility of completing said purchase until such examination was permitted. Nevertheless, the defendants then, and at all times down to the filing of said complaint, persisted in refusing to give plaintiff access to said mine. Defendant Davis has repeatedly informed the plaintiff that he 'will not perform said contract or recognize the validity of the same.'

"Plaintiff's counsel do not contend that the facts stated in the complaint carry with them any right to vary, supplement, or depart from the written contracts; nor that there was any additional agreement on the part of the defendant Davis, nor that there has been any breach of such additional agreement. His position is that, by reason of the described acts of Davis

done as aforesaid, the plaintiff was intentionally prevented from making payments at the time that they were due, and that for that reason prompt performance of the contract was excused, and that, therefore, plaintiff's right to insist upon performance of the contract by Davis was still in existence at the commencement of this action.

"Plaintiff was entitled to examine the mining property of the company. This presumably included the right to be 'accompanied by his expert.' (*Hobbs* v. *Tom Reed Gold Mines Co.*, 164 Cal. 497, [43 L. R. A. (N. S.) 1112, 129 Pac. 781].) But this was his right as a stockholder owning other stock and is a matter wholly independent of the contract between him and defendant Davis.

"(1) The plaintiff did not agree to pay the purchase price upon condition that he could inspect the property and if he could borrow enough money. His promise as stated in his contract is unconditional. The default of plaintiff took place on September 2, 1910, by nonpayment of the unpaid portion of the installment of twenty-five thousand five hundred dollars. The complaint alleges that the plaintiff's statement to Davis was that others were to advance money to be used in this transaction, and that the plaintiff would also join with said persons and furnish a portion of said purchase money. The only claim made by him of inability to pay is that he did not have sufficient ready cash to pay the entire purchase price at the times fixed by the contract. The sale by Davis to other defendants herein of a portion of the stock is alleged to have occurred 'about the month of September, 1910.' There is nothing stated in the complaint from which it can be inferred that on September 2d the plaintiff was unable to pay the comparatively small amount of money that became due on that day. This being so, the defendants did not prevent the plaintiff from making that payment 'and they did not cause him to be in default. It must be remembered that the contract is a contract of the plaintiff alone and not of the persons who were to furnish him with funds; also that the excuse for nonperformance relied upon by plaintiff was solely based upon the proposition that the defendants, and in particular the defendant Davis, prevented plaintiff from performing his part of the contract. Even on his own theory of this case, it was his duty to meet the payment of September 2d, if he had ability so to do. He would not be excused

merely because defendants' conduct with reference to his intended examination of the mine led him to believe that such conduct, if persisted in by them, would later prevent him from obtaining funds sufficient to complete his later payments. If he made the payment on September 2d and if defendant Davis, by conduct sufficient to furnish legal excuse to the plaintiff, should later prevent the plaintiff from paying the last two installments, plaintiff would in that event have ample protection at law with respect to his previous payments, as well as the right in equity or at law to enforce the entire contract.

"(2) Provisions of a contract calling for payments strictly at a time specified 'cannot be applied where the efficient cause of the failure of the party seeking specific performance to comply strictly and literally with the contract was the conduct of the other party.' (*Cheney* v. *Libby,* 134 U. S. 68, [33 L. Ed. 818, 10 Sup. Ct. Rep. 498]; *Houghton* v. *Steele,* 58 Cal. 421; *Antonelle* v. *Kennedy etc. Lumber Co.,* 140 Cal. 315, [73 Pac. 966]; *Griffith* v. *Happersberger,* 86 Cal. 606, [25 Pac. 137, 487].) Yielding full assent to this principle on which the plaintiff's case depends, it is clear that the conduct of the defendants herein was not the efficient cause of plaintiff's default on September 2, 1910. The default occurring as above stated has never been remedied by agreement or by anything in the subsequent conduct of the parties. It may also be observed in this connection that the facts alleged with reference to the persons who were to furnish funds to the plaintiff are that they would not furnish the money, unless after examining the mine the engineer should verify certain currently reported 'new discoveries of ore of great value' therein. It is not alleged that the plaintiff's engineer would have reported favorably. Even if the new discoveries had been 'of great value,' the value might have been less than sufficient to satisfy the engineer. Moreover, it is not alleged that if he had reported favorably said persons would have furnished the necessary money to enable plaintiff to perform the contract. Unless these results were certain, it is difficult to see how it could be held that the defendants prevented the payments from being made.

"(3) It does not appear that the contract was just and reasonable, or founded upon an adequate consideration; for this reason specific performance could not be enforced. (Civ. Code, sec. 3391; *Kaiser* v. *Barron,* 153 Cal. 790, [96 Pac.

806].)   It is alleged that the stock of the corporation has no established market value.   Therefore, the allegations of value as made by plaintiff must relate to intrinsic value.   One of these is that the reasonable value of the stock included in the contract was, on September 2, 1910, three dollars per share, which amounts to six hundred and twenty-four thousand dollars; yet he was buying it for two hundred and fifty-five thousand dollars.   The only other statement pertaining to value is that, in April, 1910, plaintiff's engineer had reported to him that the value of the property of the company was 'not sufficient to warrant the price fixed by said contract.'   Plaintiff has paid nothing on this valuable and important contract, except the one thousand dollars paid out on the original option.   It would seem that the price fixed by the contract of August 25, 1910, was grossly inadequate and, under the circumstances shown by plaintiff's complaint, he ought not to have affirmative relief in equity.

"Being of opinion that the complaint does not state a cause of action, we omit any discussion of the grounds of special demurrer, further than to say that if the stated case were to be treated as showing a cause of action for damages against defendant Davis, then the demurrers would have been properly sustained upon the ground of improper joinder of parties defendant, and upon the ground that the plaintiff improperly united alleged causes of action affecting some but not all of the defendants.   But we agree with counsel for plaintiff in their statement that "the whole frame of the bill of complaint is for specific performance."

"The judgment is affirmed."

Sullivan, C. J., and Angellotti, J., do not participate in the foregoing.

SHAW, J., dissenting.—I cannot agree with the conclusion of the court in the foregoing opinion.   The plaintiff and the defendant Davis were both stockholders in the Tom Reed Gold Mines Company.   Under the law every stockholder has a right to inspect the mine.   Both parties must be presumed to know this.   The complaint shows that the defendant Davis knew that the plaintiff made the contract with the expectation of obtaining means of making payments by reselling the stock to other persons.   By the contract twenty-five thousand five hundred

dollars was due on the 2d of September, and a much larger sum, one hundred and two thousand dollars, on or before the 2d of October. Defendant knew that the plaintiff could not obtain the latter sum unless he was allowed to examine the mine to discover its condition before making a resale. The condition of the mine was such that if he examined the mine he would have been enabled to make a resale and could have completed the contract. All this was known to the defendant. With the fraudulent intention of preventing plaintiff from carrying out the contract, the defendant caused the company to immediately refuse to permit the plaintiff to enter the mine for examination. He did this to prevent plaintiff from carrying out the contract, and persisted in so doing until after the payment of September 2d became due, knowing and believing that by that means he would avoid performance of the contract. In my opinion this was fraudulent and constituted an estoppel against the defendant, sufficient to prevent him from now claiming that the plaintiff was in default for failing to pay the comparatively small amount due on September 2d. If the plaintiff had paid that amount, as it may be conceded he was able to do, he was confronted with the certainty that the refusal to permit him to examine the mine would prevent him from making the much larger payment due in October, and that he would thereby forfeit the money already paid. In my opinion the defendant is in no position to claim the default which he himself has in this manner produced. I think the complaint states a cause of action.