[Civ. No. 6717. Third Dist. Mar. 17, 1943.]

FRANK JACKLICH et al., Appellants, v. MAX BAER, Respondent.

Dannenbrink, Price & Connella and Leslie Price for Appellants.

Butler, Van Dyke & Harris and B. F. Van Dyke for Respondent.

ADAMS, P. J.—This is an appeal from a judgment in favor of defendants in an action for an accounting under the terms of a written contract.

On November 22, 1930, plaintiffs Frank Jacklich and An-

thony Jacklich, as parties of the first part, entered into a contract with defendant Max Baer as party of the second part, wherein first parties agreed to pay Baer $5,000 upon the execution of the contract, an additional $5,000 within thirty days, and $5,000 three years from date. Said contract recited that Baer had on October 6, 1930, entered into an agreement with H. Lorimer and Ancil Hoffman by which he had obligated himself to engage in boxing contests, etc., under the direction and control of said Lorimer and Hoffman, and it was agreed that first parties would use their best efforts and endeavors ''to secure the faithful performance'' of said agreement with Lorimer and Hoffman ''and to manage, supervise and preserve the property and effects'' of second party. Baer on his part agreed that in consideration of the $15,000 ''and other valuable consideration,'' he would pay to first parties ten per cent of the net proceeds of all boxing contests, etc., referred to in the contract with Lorimer and Hoffman. The contract provided that it should bind the parties mutually for ten years, beginning December 1, 1930. There was also a provision that it should, at the option of first parties on sixty days' notice and the payment of five dollars, be extended for another period of ten years. It also provided that should the option provided for in the Lorimer-Hoffman contract not be exercised Baer would, upon the termination of said agreement, execute a similar contract with first parties, except that Baer should have 66⅔ per cent and first parties 33⅓ per cent.

Under the foregoing contract Baer received $10,000 in two different payments.

On January 11, 1932, a new contract was entered into between the parties to the agreement of November 22, 1930. It recited that the parties were desirous of terminating and cancelling the prior contract and executing a new one; that second party was indebted to the first parties in the sum of $13,500; that the prior contract was terminated, cancelled and revoked and of no further force and effect, that none of the parties should have any rights arising out of the terms thereof, and that the new contract should constitute a mutual release of the parties of all claims, demands, etc., thereunder, and an acknowledgment by the parties that each had paid to the other whatever might be due and owing.

It further recited that this agreement should be in effect for five years, commencing December 1, 1930, and ending

November 30, 1935, and provided that Baer should pay to first parties 15 per cent of the net proceeds of all boxing contests, etc., in which he should engage during the period specified until the sum of $13,500 should be paid to first parties, and 10 per cent thereafter until the expiration of the agreement. Net proceeds were to be arrived at by "deducting all training expenses, railroad fares and all other expenses and costs" incurred or expended by second party "of every kind and character whatsoever" in the proper exploitation of second party, from the gross income or receipts of all performances, contests and exhibitions mentioned. Payments were to be made to first parties by Baer "on statements rendered by second party within fourteen (14) days after second party shall have received the proceeds" of such contests, exhibitions, and other performances. Said contract also provided that the term thereof should and would at the option of the parties of the first part be extended for a further period of five years, commencing on the 1st day of December, 1935, provided the parties of the first part notified the party of the second part sixty days prior to said date, and paid the party of the second part the sum of five dollars at any time before the 1st day of December, 1935.

The action before the court was commenced by plaintiffs September 29, 1937. They alleged the execution of the contract of January 11, 1932, the assignment of an interest therein to plaintiffs Ahlin and Rudolph Jacklich, the exercise by plaintiffs of the option set forth in said contract, and a failure of Baer to account to plaintiffs under said contract or to pay to them the percentage of net proceeds as provided therein. A decree directing defendant to account to plaintiffs for all contests, exhibitions, exercises and performances engaged in by him from January 11, 1932, to date, and for judgment for the amount found due, was prayed.

Baer filed an "answer, counterclaim and cross-complaint," alleged the payment of the $13,500 provided in said agreement to be paid, that all matters occurring within the term of the contract had been fully accounted for to plaintiffs, and that the total sum of $33,673.43 had been paid to plaintiffs. It was further alleged that the said agreement insofar as it provided for payment of sums in excess of the principal indebtedness and lawful interest thereon was invalid, usurious, and void, and that all payments over and above said indebt-

edness were without consideration and in violation of section 955 of the Civil Code. (Assignment of wages.) It also alleged that insofar as said contract purported to bind defendant to pay to plaintiffs any greater sum than the $13,500 together with interest, it was "harsh, oppressive, unjust and inequitable and void, and that likewise insofar as said contract purported to grant to plaintiffs an option or right to renew said contract for an additional term of five years notwithstanding the complete repayment of said debt and lawful interest thereon, the same was harsh, oppressive, unjust, inequitable and void." Judgment was prayed that plaintiffs take nothing and that defendant recover of plaintiffs the sum of $20,173.43, with interest.

On July 24, 1939, plaintiffs filed a supplemental complaint bringing their demands up to date, and an amendment to their complaint making Buddy Baer a party defendant, alleging that the latter had received moneys that should have been paid to Max Baer, 10 per cent of which moneys should be paid to plaintiffs.

The action was tried by the court. Findings of fact and conclusions of law were filed wherein it was was found that pursuant to the contract of January 11, 1932, defendant had paid to plaintiffs, prior to December 1, 1935, a total sum of $32,738.55, thereby paying the sum of $13,500 provided by said contract to be paid, and the additional sum of $19,238.55; that defendant had engaged in many boxing contests, exhibitions, etc., and that during said period plaintiffs at frequent intervals had demanded, and received, accountings for each and all said contests, exhibitions, exercises, motion pictures, vaudeville and theatrical performances, and such accounts were never refused by defendant; that when said accountings were rendered, the amounts due the plaintiff were in each instance agreed upon between the parties, and the amounts due as so agreed were paid by defendant to plaintiffs. The court found it to be untrue that the defendant had betrayed or violated his obligations under said contract to plaintiffs, untrue that he had refused or failed to render the accountings provided in said contract, and likewise untrue that he had failed to pay plaintiffs a percentage of the net proceeds, as provided in said contract; also that it was not true that any further accounting was necessary between the parties or that anything was owing or unpaid from defendant to plaintiffs by reason of said contract.

It was further found that insofar as said contract purported to grant to plaintiffs an option or right for an additional term of five years, and the right during said additional term of five years to have and receive of defendant 10 per cent of his earnings upon the mere payment to him of the sum of five dollars, notwithstanding defendant should have fully performed the said contract during said period from the date thereof to December 1, 1935, and notwithstanding he should have repaid during said first period said sum of $13,500, together with interest thereon, the said contract was harsh, oppressive, unjust, inequitable, fraudulent and void, and that plaintiffs were not entitled to have or receive of defendant any further sums whatsoever from his earnings through activities from and after December 1, 1935.

Judgment having been entered that plaintiffs take nothing, they moved for a new trial contending that no accounting had ever been made under the contract, and that an accounting would disclose a large sum of money due plaintiffs; also that the renewal clause of the contract was valid and that the court erred in denying it any effect. The motion was denied, the trial court rendering an opinion in which it stated that as to settlements during the five year period, the evidence showed they had been made by defendant and accepted by plaintiffs, and that the latter had given receipts in full therefor. As to the so-called ''option'' provision of the contract the court said that it ''was not an option at all, there was nothing to decide, there were no alternatives''; that if it meant that plaintiffs were, without any benefit moving to defendant and without regard to whether or not the amount recited in the contract as owing plaintiffs had been repaid, to acquire the right to a large share of defendant's earnings for another five years, such construction was so harsh and unjust that the court could not hold that it was in contemplation of the parties; that the only construction to be given it consistent with justice and fair dealing, and exclusive of wrong and exploitation, would be that it was to be operative for a second period in the event that within the five year life of the contract the indebtedness of defendant to plaintiff had not been satisfied; that such construction would be reasonable but would have no operation, as the indebtedness had been fully paid; and that a court of equity would not aid or help to execute the contract if it was in-

tended, as contended by plaintiffs, that they were to be allowed, without regard to whether defendant's debt had been fully and abundantly compensated, to exact from defendant a large share of his earnings for another five years.

We are in accord with the views of the trial court. As to the payments made to plaintiffs during the period prior to December 1, 1935, the evidence is quite sufficient to support the finding that defendant had accounted to plaintiffs and that plaintiffs had been paid in full the amounts agreed by the parties to be due them.

The testimony of Ancil Hoffman was that he had made all the payments that were made; that he always kept the record of his receipts for moneys that he paid out and after any certain fight would bring it back and turn it over to Baer's accountant; that the Jacklich brothers never wanted to wait and would always ask for a settlement before the accountant could really get an actual account of the money; but that he (Hoffman) would have all the checks and the check register showing what each was for, and those were always there for them at any time they wanted to see them, and that that was how they arrived at the payments that were made; that they would look over the the records and there would be arguments about them, but the Jackliches would always compromise and finally decide among themselves what the payment would be, and that he (Hoffman) would make payment to them; that he was always present at the conferences with the Jacklich brothers about the statements; that he would exhibit to them vouchers and receipts showing what expenses had been incurred; that they would not pay any attention to some of them but on any large amount would have an argument; that when they would object to an item it was argued out and they would finally hit upon what to do with it and would come to a conclusion of what the payments would be; that when they would finally get together on a settlement duplicate receipts would be written out which would be signed, and the Jackliches would take one and Hoffman the other; that there was nothing said about any further statements to be made and there was no agreement or understanding or undertaking that notwithstanding the receipts any further accounting would be had; that he would ask them if they didn't want to wait and get a statement from Bookman, the accountant, but they would say they would rather "take it up with us" even if it didn't come up to what he would say,

and get their money, and that was the way it would be settled; that that sort of thing was gone through with whenever a receipt was taken; that they never asked for any further accountings and there was no agreement that they were to have further statements or accounts; that they would always be satisfied before they would sign a receipt; that he never said that if they would sign a receipt that he would give them further accounts or pay further sums; that it was always understood that they had settled up to the recited date and that no further accounting was required. Regarding the settlement for the Baer-Joe Louis fight, Hoffman testified that there had been $2,000 paid to the Jackliches in New York, as they wanted part of their money to buy some second-hand cars to help pay their expenses in coming to California; that the final receipt was signed in Oakland at a meeting at Baer's house; that they were there two or three hours, at which time he showed them his expenses and they finally arrived at this certain figure, whereupon he drew the check himself, which was supposed to be in settlement in full. He produced checks and receipts showing amounts paid plaintiffs and receipted for by them, which are not disputed by plaintiffs. For instance, the receipt dated October 14, 1935, after the Baer-Joe Louis fight, and signed by Frank and Anthony Jacklich, acknowledged the receipt of $8,969.33, "being payment in full to date in accordance with Agreement entered into the eleventh day of January, 1932, by and between Frank and Anthony Jacklich and Max Baer. The above amount settles in full to date all moneys due by Max Baer and does not effect any moneys that may become due on any work covered by agreement after this date. The above amount is paid in accordance with statement rendered this date showing the amount due." The check for the foregoing amount bore the legend in Hoffman's writing, "Settlement to date in accordance with agreement dated Jan. 11, 1932."

On July 1, 1934, a payment of $6,000 was made on account of the Baer-Carnera fight. The check bore the legend in Hoffman's writing, "On account of Baer-Carnera and Radio to date." Another receipt for $2,747.53, dated September 25, 1934, read: "Received of Ancil Hoffman, for Max Baer the sum of (Twenty seven Hundred forty seven dollars fifty three cents.) ($2747.53) in full to date on contract. this settles any amount past due from Max Baer on account of

any contract. this in no way affects the ex*h*isting contract that is now in force between Jacklich Bros. and Max Baer.'' A check for a corresponding amount, of same date, bore the legend, ''In full to date on contract.''

Hoffman testified that after exercise of the so-called option was refused he made no further payments on the contract.

Regarding checks dated subsequent to December 1, 1935, totaling $900, there is testimony that these checks were paid on account of matters not connected with the contract. Endorsements upon them to the effect that they were received on account of the contract were not written thereon by Hoffman who drew the checks, but were added thereafter by someone else.

Conceding that there is a conflict in the testimony as to whether settlements made were final and whether payments made were in full to date thereof, there is ample evidence to support the findings of the trial court that nothing further is owing or unpaid to plaintiffs by reason of said contract.

Regarding the finding of the trial court as to the provision in the contract that on payment of five dollars plaintiffs' right to receive ten per cent of defendant's earnings should be extended for an additional term of five years, that said contract was harsh, oppressive, unjust, inequitable, fraudulent and void, appellants argue that the contract must be considered as an entire contract, supported by adequate consideration. They do not contend that the five dollars provided to be paid for such extension constitutes adequate consideration, and they impliedly concede that the indebtedness of $13,500 recited in the contract is not sufficient to render this provision fair, equitable, just and unoppressive, for they argue that the cancellation of the prior contract must be considered as the real consideration for their entering into the later one, and that in consenting to the cancellation of the earlier one they surrendered the right given thereunder to manage Baer and to receive 33⅓ per cent of the profits. However, this argument ignores the fact that the earlier contract did not give them such right, but provided merely that ''in the event'' that Lorimer and Hoffman did not exercise the option provided for in their contract with Baer, that the latter would, on termination of that agreement, enter into a contract with first parties. Furthermore, the trial court was not bound to accept the testimony of appellants that the first contract was cancelled at the instigation of respondent. The

contract itself recited that the parties were desirous of executing the new agreement, and that it constituted a mutual release of all parties. As to the argument of appellants that the contract must be considered as an entire one, we think this is beside the point. Even if it were considered as entire this would not preclude a court of equity from refusing to enforce a provision thereof that was violative of the principles of equity, though it might, on the other hand, impel a court of equity to hold the whole contract unenforceable if held to be an entirety. Section 3391 of the Civil Code of California provides that specific performance cannot be enforced against a party to a contract if he has not received adequate consideration for such contract, or if it is not as to him just and reasonable.

■ Equity will not lend its aid to enforce contracts which upon their face are so manifestly harsh and oppressive as to shock the conscience; it must be affirmatively shown that such contracts are fair and just. (In re *Chicago Reed & Furniture Co.*, 7 F.2d 885; *Weeks* v. *Pratt*, 43 F.2d 53 (cert. den. 283 U.S. 892 [51 S.Ct. 106, 75 L.Ed. 786]); *Gabrielson* v. *Hogan*, 298 F. 722; *Kenyon* v. *Weissberg*, 240 F. 536; *Clark* v. *Rosario M. & M. Co.*, 176 F. 180 [99 C.C.A. 534]; *Marks* v. *Gates*, 154 F. 481 [83 C.C.A. 321, 12 Ann. Cas. 120, 14 L.R.A. N.S. 217]; *Agard* v. *Valencia*, 39 Cal. 292, 302; *Hobbs* v. *Davis*, 168 Cal. 556, 563 [143 P. 733]; *Winchester* v. *Becker*, 8 Cal.App. 362, 366-367 [97 P. 74]; *Koblick* v. *Larson*, 57 Cal.App. 462, 466-467 [207 P. 929]; *Moore* v. *Heron*, 108 Cal.App. 705, 711 [292 P. 136]. Also see cases cited 65 A.L.R. p. 57 et seq.)

It is said in Pomeroy's Equity Jurisprudence (5th ed.), section 400, that the doctrine that he who seeks equity must do equity means that the party asking the aid of the court must stand in conscientious relation towards his adversary; that the transaction from which his claim arises must be fair and just and that the relief itself must not be harsh and oppressive upon the defendant. And that specific performance will always be refused when a contract itself is unfair, one-sided, unconscionable, or affected by any other such inequitable feature, and when specific enforcement would be oppressive upon the defendant, or would prevent the enjoyment of his own rights, or would in any other manner work injustice. (Citing: *Cooper* v. *Pena*, 21 Cal. 403, 411.)

And we find in 58 C.J. 951: "It is a rule of early origin and widespread acceptance, even being made the subject of codification in some states, that no matter how sufficient legally, any contract, to be entitled to specific performance must be fair, just and reasonable in all its terms or parts and in its surrounding circumstances." (Also see 23 Cal. Jur. 438.)

In *Blattman* v. *Gadd*, 112 Cal.App. 76 [296 P. 681], the court had before it a contract for fees entered into between a reclamation district and an attorney, and which the trial court had held to be unreasonable, unconscionable and void. The opinion states, pages 95-97: "Phrasing it bluntly, the unconscionableness of the entire transaction was manifest, and the proceeding in its inception indicated a scheme rather than a contract. . . . The case, as a whole, in all its phases, must be considered, and after such consideration, we agree with the trial court that the contract was unreasonable and unconscionable and therefore void."

We think the trial court gave to the contract before us a reasonable, fair and just construction when it said that the so-called "option" for the five year extension was to be exercised only in the event that the whole of the indebtedness of Baer recited therein was not fully repaid during the term expiring November 30, 1935. And in view of the fact that said indebtedness has been paid and plaintiffs have received some $20,000 in addition without performing services of any kind on their part, no equities in their favor appear calling for the interposition of a court of equity.

The judgment is affirmed.

Thompson, J., and Schottky, J. pro tem., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 13, 1943.