[Civ. No. 6026.   Fourth Dist.   May 4, 1960.]

BEATTY SAFWAY SCAFFOLD, INC. (a Corporation), Appellant, v. B. H. SKRABLE, Respondent.

Vladimir Vucinich and William Berger for Appellant.

Crossland, Crossland & Richardson and William C. Crossland for Respondent.

GRIFFIN, P. J.—About March 12, 1956, plaintiff corporation brought this action for accounting, specific performance, damages and injunction against certain described defendants including B. H. Skrable individually, respondent herein (hereinafter referred to as defendant), alleging that defend-

ants, on September 7, 1948, as distributors, entered into an agreement in writing (Exhibit A, dated September 7, 1948, attached to complaint) relating to the exclusive distribution by defendant of scaffolding and grandstand equipment in Kern and San Luis Obispo Counties manufactured by plaintiffs in San Francisco. In addition to many other provisions, Exhibit A provided, in paragraph 2:

"The DISTRIBUTOR hereby agrees to purchase or lease from the COMPANY all of the DISTRIBUTOR's requirements of standard scaffolding and grandstand equipment, and the COMPANY agrees to sell or lease, as the case may be, such equipment to the DISTRIBUTOR on the terms and subject to the conditions hereinafter provided."

Paragraph 4 provides: "The DISTRIBUTOR shall pay for purchased equipment at the COMPANY's then list prices, which may be changed by the COMPANY from time to time without notice. . . ."

Paragraph 6 reads: "The term of this agreement shall be for five (5) years from date hereof unless sooner terminated as hereinafter provided. The DISTRIBUTOR shall have the option to renew this contract for an additional period of five (5) years provided the DISTRIBUTOR has complied with all of the terms and conditions of this agreement. . . ."

Paragraph 9 provides: "The DISTRIBUTOR will not manufacture, sell or lease in said territory any devices, products or equipment competing with the devices, products and equipment mentioned in this agreement, during the continuance of this agreement and for three (3) years thereafter."

Paragraph 16 recites: "In the event that either party to this agreement shall fail or neglect to do or perform any of the terms, promises or conditions on its part to be done or performed, the aggrieved party may at its option terminate this agreement upon thirty (30) days' written notice of such default and termination. . . . In the event of termination of this contract, the DISTRIBUTOR agrees to discontinue the use of the trade name 'SAFWAY' and 'BEATTY' and to change any corporate name used by it eliminating the name 'SAFWAY' and 'BEATTY.' "

Paragraph 21 reads: "The DISTRIBUTOR shall have the exclusive selling right of the COMPANY's standard scaffolding and grandstand equipment in said territory for the term of this agreement so long as the DISTRIBUTOR shall secure a minimum of $15,000.00 at DISTRIBUTOR's cost, of sales annually. . . ."

Paragraph 21-c provides: "In the event the DISTRIBUTOR does not secure the minimum annual sales herein provided, the COMPANY at its option shall have the right to terminate this agreement in the manner herein provided or to terminate the said exclusive selling and rental rights."

Paragraph 22 reads: "If this agreement shall be terminated, then the COMPANY shall have the option to repurchase all of the DISTRIBUTOR's inventory of SAFWAY equipment and shall pay therefor the DISTRIBUTOR's net cost for such equipment, less 10% annual depreciation if such equipment is in good condition."

Defendant Skrable, by way of cross-complaint against plaintiff corporation, alleged that $386 was due defendant in connection with the sale of certain bleachers. The trial court denied recovery on this cross-complaint. A dismissal was entered as to defendants H. M. Skrable and Son and H. M. Skrable and Son, a copartnership.

## FACTS

Defendant did business under the names of "Beatty Safway Scaffold Company" from September 7, 1948, to January 1, 1951, and as "Safway Scaffold Company" from January 1, 1951, to December 1955, and thereafter as "Tubular Scaffold Company."

It is conceded that defendant's stipulated sales quota of $15,000 per annum was never met; the required rental inventory of $25,000 was never acquired during the life of the contract. It does appear that after September 7, 1953, defendant purchased about three-fourths of his scaffolding from other companies. Apparently it was this action that gave rise to the main dispute between these parties. On April 13, 1951, plaintiff wrote defendant cancelling the exclusive sales privilege in his territory for products manufactured by the plaintiff.

The principal claim of defendant on this appeal is that, by the terms of the original written agreement, it was to run only for a term of five years unless sooner terminated, and the distributor had an option to renew it for a like term, provided he had complied with all of its terms; that he never exercised this option by notice in writing or otherwise and never fully complied with its terms, and accordingly it expired of its own force; and since it was not in effect at the time of the claimed breaches, plaintiff had no right of action on it. Plaintiff admits defendant gave no written or oral notice of renewal, but

contends that by defendant's action in continuing to purchase merchandise under it and accepting the benefit of it, he did in fact exercise his option to renew, and also argues that defendant would be estopped to deny it. The court specifically found against plaintiff on these questions. This point will determine many of the other points raised on this appeal.

It is the general rule that when a contract specifies the period of its duration, it terminates on the expiration of such period. (12 Am.Jur. 860, § 305.) No notice of any kind to renew the contract was given by the defendant at any time. No inquiry of any kind concerning the renewal was made by the plaintiff. There was no communication concerning renewal between the parties, oral or written, before or after the expiration of the contract. We are here dealing with a provision for the *renewal* of a contract, not an *extension* of one. There is a clear distinction between renewing a contract and extending the terms thereof. As applied to leases, it has been said:

"Extension may be defined as the act of stretching or spreading out of the former term of the lease. A renewal, on the other hand, creates a new estate, and imports the execution of a new lease." (30 Cal.Jur.2d 234, § 98.) See also *Burroughs* v. *Ben's Auto Park, Inc.,* 27 Cal.2d 449, 454 [164 P.2d 897]; *Robertson* v. *Drew,* 34 Cal.App. 143, 144 [166 P. 838]; *Shamp* v. *White,* 106 Cal. 220, 222 [39 P. 537]. In *Pyrate Corporation* v. *Sorensen,* 44 F.2d 323, the court held there was a distinction between leases of real property and renewal of an ordinary contract, because, in dealing in an estate in real property, time and manner of renewal must be determined with relation to that estate. There was evidence in the instant case that almost immediately after the five-year period mentioned in the contract, defendant started purchasing tubular products from other sources and plaintiff knew of such reduction in business with its firm. It likewise knew of defendant's failure to report and to maintain an inventory in the amount mentioned in the agreement. Defendant failed to act differently although warned by plaintiff in a letter of August 10, 1950, in reference to sales requirements necessary to protect his exclusive rights granted under the agreement. Plaintiff claims that after the five-year period, it, up to January 12, 1956, when the contract was completely terminated by it, continued to protect defendant against all other dealers, furnished advertising matter, invited defendant to conventions and treated him as a distributor, and accordingly

defendant would be estopped from denying a renewal of the agreement.

█ It has been held that where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent (*Wold* v. *League of the Cross*, 114 Cal.App. 474, 479 [300 P. 57]), and the conduct of an offeree may constitute acceptance. (*Beatty* v. *Oakland Sheet Metal Supply Co.*, 111 Cal.App.2d 53, 62 [244 P.2d 25].) All parties concede that when there is any substantial evidence in conflict on the subject, it is a factual question whether an offer has been accepted by the offeree's silence or acquiescence. (*McAulay* v. *Jones*, 110 Cal.App.2d 302, 309 [242 P.2d 650] ; Civ. Code, § 1581.) █ This same rule applies to estoppel. (*Roven* v. *Miller*, 168 Cal.App.2d 391, 400 [335 P.2d 1035] ; *O'Connell* v. *Weitzman*, 168 Cal.App.2d 400, 404 [336 P.2d 592].)

█ We conclude that the question whether, by the action or conduct of the parties, there was or was not a renewal of the contract, was a factual question for the trial judge. His finding that there was no such renewal has evidentiary support. (*Martin* v. *Zellerbach*, 38 Cal. 300, 311 [99 Am.Dec. 365] ; *Hagenbuch* v. *Kosky*, 142 Cal.App.2d 296 [298 P.2d 875].)

█ Next, plaintiff claims the court erred in not compelling defendant to specifically perform the agreement and resell his rental scaffolding equipment back to plaintiff under paragraph 22 of the agreement. As noted, it provides that if the agreement is *terminated*, the company has the option to repurchase inventory of Safway equipment, at cost, less 10 per cent annual depreciation. Much depends on the meaning of the word "terminate" as used in the agreement. Plaintiff argues that since the court found that the agreement, by its own terms, expired on September 7, 1953, and was not renewed, it was, in law and in fact, terminated and this provision entitled plaintiff to specific performance of the agreement in this respect. A close question arises as to the legal interpretation of the word "terminated" as thus used. Paragraph 16 provides that the agreement may be *terminated* if either party fails to perform any of the terms of the agreement. The agreement is capable of the construction placed upon it by the trial court that only in the event of termination of the contract within the five-year period would plaintiff be entitled to repurchase the specified equipment at the price indicated. If so, this would support the finding of the trial court that no specific performance could be enforced under

the conditions here presented. Regardless of this conclusion, it appears from the finding of the trial court that the price agreed to be paid by plaintiff on return of the equipment, at the time demand was made, was unjust and unreasonable. The evidence might support this finding. Accordingly, no specific performance could be ordered. (*Jacklich* v. *Baer*, 57 Cal.App.2d 684, 693 [135 P.2d 179].)

The same result would obtain in respect to plaintiff's endeavor to enforce paragraph 9 of the agreement wherein defendant agreed not to sell or lease in that territory any equipment during the three-year period after the termination of the agreement. ▮ In addition, that portion of the agreement pertaining to the three-year period above-mentioned, was properly held by the trial court to be in violation of section 16600, Business and Professions Code, reading:

"Invalidity of contracts. Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." The agreement does not come within the exceptions provided by section 16601 (sale of good will of business) or section 16602 (partnership dissolution), Business and Professions Code. (*Hunter* v. *Superior Court*, 36 Cal. App.2d 100 [97 P.2d 492].)

▮ Some lip service is given to the fact that defendant continued doing business under defendant's trade name and allowed a telephone listing to continue in the telephone book indicating defendant was still handling plaintiff's products after the agreement had been terminated, in violation of paragraph 9 thereof. At the time of trial, it was conceded that defendants were not so engaged and that the telephone listing had been cancelled. The complaint did not allege damages for breach of the agreement in this respect, but during the trial there was inserted the general prayer that by reason of the premises, plaintiff has been damaged in the sum of $10,000, indicating general damages as opposed to special damages. There was no evidence of any special or general damages suffered by plaintiff in this respect and the trial court rightfully and specifically so found. (*Treadwell* v. *Whittier*, 80 Cal. 574, 579 [22 P. 266, 13 Am.St.Rep. 175, 5 L.R.A. 498]; *Judson Manufacturing Co.* v. *Lutge*, 174 Cal. 566, 567 [163 P. 1017].)

Under the findings, the prayer for an accounting, specific performance, injunction and damages was properly denied.

Judgment affirmed.

Coughlin, J., concurred.