Filed 11/1/21; Certified for Publication 12/1/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BMC PROMISE WAY, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF SAN BENITO et al.,<br><br>    Defendants and Respondents. | H046707<br>(San Benito County<br>Super. Ct. No. CU1500056) |

A tax sharing agreement between the County of San Benito and the City of Hollister requires the city to pay the county a fixed fee (referred to as the "Additional Amount") per residential unit constructed on land annexed into the city from the county during the period covered by that agreement. Plaintiff's predecessor in interest entered into an annexation agreement with the city under which it agreed to comply with "all applicable provisions" of that tax sharing agreement in return for the city's agreement to annex certain land. When plaintiff purchased the annexed land and sought to develop it into two subdivision projects, the city informed plaintiff that it was liable for the Additional Amount fees. Plaintiff paid the fees under protest and then sued both the city and the county seeking a declaration of its rights and duties under various written instruments. Following a court trial, judgment was entered against plaintiff.

Plaintiff seeks to demonstrate on appeal that it is not liable for the Additional Amount fees. Plaintiff contends that neither the annexation agreement nor the 1999 tax sharing agreement requires plaintiff to pay the Additional Amount to the city; and even if

the annexation agreement imposed the Additional Amount fees, plaintiff is not liable for them because they violate the Mitigation Fee Act and federal constitutional constraints on development fees as monetary exactions. For the reasons stated here, we will affirm the denial of relief because plaintiff is contractually liable for the Additional Amount by the terms of the annexation agreement, and any challenge to the calculation of the Additional Amount is both beyond the scope of plaintiff's declaratory relief action and barred by applicable statutes of limitations.

## I.  TRIAL COURT PROCEEDINGS

### A.  TAX SHARING AGREEMENTS BETWEEN THE CITY AND COUNTY

The city and the county entered into a "Master Agreement for Tax Transfer Upon Annexation" in 1999 (the 1999 tax sharing agreement). (Capitalization omitted.) The stated intent of the agreement is that "any annexation and development of residential property shall be fiscally neutral to the City and County." The agreement applies to "all those local agency boundary changes defined in Revenue and Taxation Code section 95(e) as jurisdictional changes, occurring during the applicable period of this agreement, where County is the affected county and City is an affected city." Among other taxes and payments, Term 5(b)(i) of the agreement requires the city to pay the county the Additional Amount: "City shall pay to County an additional amount for property annexed as residential property within the affected territory in an amount equal to $7,000 for each single family dwelling unit ultimately created within the affected territory." The agreement further provides: "The Additional Amount owed by the City to County shall accrue at the time City issues a building permit for any structure on a particular parcel of land within the affected territory." The formula to calculate the Additional Amount was to be "adjusted annually ... based on changes in the Consumer Price Index." The city agreed to pay the Additional Amount "regardless of the revenue source" the city identified to make the payments. To ensure payment of the Additional Amount, the city agreed that the county could "deduct the Additional Amount then owed ... from City's

2

property tax allocation whether such allocation is derived from the affected territory or any area within the incorporated territory" of the city. By its terms the agreement was effective until January 1, 2010.

The city and the county entered into a new master agreement for tax transfer in 2011. As under the 1999 tax sharing agreement, the city agreed to pay an Additional Amount for each residential unit. Two relevant elements of the 2011 agreement are different: the Additional Amount under the 2011 agreement was $9,500 per unit, and the amount would accrue when the city signed off on a final occupancy permit for any structure on a particular parcel of land (rather than when a building permit was issued).

## B. ANNEXATION AGREEMENT

Plaintiff's predecessor in interest (Rajkovich) entered into an annexation agreement with the city that was recorded against the affected property in 2000. (The parties to this appeal agree that the annexation agreement applies to the property encompassing both subdivisions at issue here.) In return for the city approving Rajkovich's application to annex the property, Rajkovich agreed "to hold and use the Property in compliance with and subject to all City ordinances, resolutions, and policies, and in compliance with all applicable provisions of the Tax Sharing Agreement" between the city and the county. The annexation agreement continues: "As a condition of annexation, [Rajkovich] agrees to comply with all applicable provisions of the above-referenced Tax Sharing Agreement including without limitation those provisions relating to Allocations and Payments (section 5), which require, without limitation, payment of a $7,000 residential unit fee for each residential unit developed within the Property." The recorded annexation agreement states that its conditions "shall be binding on all of [Rajkovich's] heirs, successors and assigns and shall run with the Property." It further provides that it "shall not be revoked or modified without the prior consent of the City Council of the City of Hollister and shall be recorded against the Property and each part thereof and shall be binding on all persons or legal entities succeeding to [Rajkovich's]

3

interest in and to the Property or any part thereof." The county's Local Agency Formation Commission approved annexation of the property into the city in 2002.

## C. HOMESTEAD AND SADDLEBROOK PROJECT APPROVALS

The city's Planning Commission approved a tentative subdivision map in 2013 for Rajkovich to develop part of the annexed land into what is referred to as the Homestead project. Condition of approval No. 43 refers to the annexation agreement, stating that the project is "subject to the terms and conditions set forth in the annexation agreement entered into between" Rajkovich and the city. (The parties agree that plaintiff acquired from Rajkovich all of the property covered by the annexation agreement, though neither points to evidence in the record reflecting that transfer.)

The city's Planning Commission approved a tentative subdivision map in 2015 for plaintiff to develop the remainder of the land covered by the annexation agreement into what is referred to as the Saddlebrook project. Unlike the Homestead project, nothing in the Saddlebrook approval expressly references the annexation agreement. But condition of approval No. 40 requires plaintiff to "pay all fees including all fees required by reimbursable agreements, drainage agreements, improvement plan checking fees and inspection fees as well as any applicable fees pursuant to the Public Works Master plan."

## D. LITIGATION

When plaintiff sought building permits for the Homestead and Saddlebrook projects, the city or the county apparently informed plaintiff that it would have to pay the Additional Amount for each residential unit it developed. Plaintiff paid the city over $1.3 million under protest to cover the Additional Amount fees for the residential units it planned to build in the Homestead and Saddlebrook projects. Plaintiff then filed a separate lawsuit for each project, naming both the city and the county as defendants. The lawsuits sought, among other things, a declaration that the Additional Amount (referred to by plaintiff as a "Fiscal Neutrality Fee") was illegal under the Mitigation Fee Act, the 1999 or 2011 tax sharing agreements, the annexation agreement, or the California

4

Constitution. The city cross-complained against the county seeking to invalidate the city's Additional Amount obligations by attacking the validity of the tax sharing agreements, but the city and the county later settled their dispute. The trial court consolidated plaintiff's cases and conducted a single court trial on plaintiff's complaints. No party requested a statement of decision.[1] The trial court entered judgment against plaintiff, finding that the "Fiscal Neutrality Fee is valid and applies to the Homestead project. The Fiscal Neutrality Fee is valid and applies to the Saddlebrook project. Plaintiff's challenges to the 1999 and 2011 Master Tax Sharing Agreements and Fiscal Neutrality Fee, as applied to the Homestead and Saddlebrook Projects, are barred by applicable statutes of limitations."

## II.    DISCUSSION

Plaintiff and the county briefed this appeal. The city did not separately brief the appeal and instead joined the county's respondent's brief.

### A. STANDARD OF REVIEW AND SCOPE OF DECLARATORY RELIEF

"Any person interested under a written instrument ... or under a contract, or who desires a declaration of his or her rights or duties with respect to another ... may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action ... for a declaration of his or her rights and duties ... including a determination of any question of construction or validity arising under the instrument or contract." (Code Civ. Proc., § 1060.) In a declaratory relief action where, as here, the underlying facts are undisputed, we review de novo the trial court's interpretation of a written instrument. (*Hott v. College of Sequoias Community College Dist.* (2016) 3 Cal.App.5th 84, 95.) In interpreting a written instrument, we consider the instrument as

_____

[1] Plaintiff refers repeatedly in its opening brief to an "oral statement of decision." But a statement of decision must be requested (Code Civ. Proc., § 632), and no party requested one here. As such, we review the judgment without regard to oral statements made by the trial court at the hearing. (*Wallis v. PHL Associates, Inc.* (2013) 220 Cal.App.4th 814, 825.)

a whole "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641; *Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 82.)

The parties dispute whether various statutes of limitations bar plaintiff's actions for declaratory relief. Limitations statutes " 'applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief.' " (*Abbott v. City of Los Angeles* (1958) 50 Cal.2d 438, 463.) When, as here, " 'declaratory relief is sought "before there has been a breach of the obligation in respect to which said declaration is sought," or within the statutory period after the breach, the right to such relief is not barred by lapse of time.' " (*Ibid.*) Because plaintiff paid the Additional Amount fees under protest and promptly sought a declaration of its rights and duties under the annexation agreement, its actions under Code of Civil Procedure section 1060 seeking declaratory relief are timely as to whether the annexation agreement compels it to pay those fees.

Interpreting the annexation agreement and determining whether plaintiff is liable for the Additional Amount are properly before this court, but plaintiff's attempts to invalidate the Additional Amount as unconstitutional or improper under the Mitigation Fee Act are untimely. "While the court in a declaratory relief action may properly determine questions as to rights and duties arising out of an existing contract [citations], it may not make a new contract for the parties or, in lieu of construing an existing contract, incorporate new obligations into it." (*Culbertson v. Cizek* (1964) 225 Cal.App.2d 451, 462.) Assessing whether the Additional Amount was properly calculated when the city and county negotiated their 1999 tax sharing agreement over 20 years ago (or even whether that amount was properly included in the annexation agreement in 2000) would potentially require us to rewrite the underlying annexation agreement and is therefore not within the scope of our review. Under even the most generous limitations period that might arguably govern a challenge to the amount of

6

those fees (i.e., the four-year statute for actions on a contract under Code of Civil Procedure section 337), plaintiff's actions were filed more than a decade late. Plaintiff attempts to avoid the impediment by arguing that it is not challenging any provision of the 1999 tax sharing agreement and is rather challenging what it refers to as the "Fiscal Neutrality Fee" imposed after plaintiff applied for building permits. But it is clear that the Fiscal Neutrality Fee and the Additional Amount are one and the same, and the statutes of limitations have long run on any challenge to the agreements that established the Additional Amount.

## B. THE JUDICIAL ADMISSIONS DOCTRINE DOES NOT APPLY

Based on statements in the city's cross-complaints against the county, plaintiff argues the doctrine of judicial admissions binds the city to "statements and admissions in the Cross-Complaints that the Fee was illegally imposed on the Homestead and Saddlebrook Projects." Judicial admissions are admissions of fact that "may be made in a pleading, by stipulation during trial, or by response to request for admission." (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746.) "Facts established by pleadings as judicial admissions ' "are conclusive concessions of the truth of those matters, are effectively removed as issues from the litigation, and may not be contradicted[] by the party whose pleadings are used against him or her." ' " (*Ibid.*) But "judicial admissions involve facts, not legal theories or conclusions." (*Stroud v. Tunzi* (2008) 160 Cal.App.4th 377, 384.)

Plaintiff's argument related to judicial admissions suffers from two defects. First, the "fact" that plaintiff contends was admitted is that the Additional Amount was "illegally imposed on the Homestead and Saddlebrook Projects." But the validity of the Additional Amount is a legal question that cannot be the subject of a judicial admission. Second, the *county* is not bound by any statements in the city's cross-complaints.

## C. PLAINTIFF MUST PAY THE ADDITIONAL AMOUNT

The parties' arguments about the source of plaintiff's liability for the Additional Amount have evolved as this case has progressed. Their appellate briefing largely focuses on whether the annexation agreement between the city and plaintiff's predecessor makes plaintiff liable to the city for the Additional Amount. We agree that the annexation agreement is the proper instrument to interpret. But because the annexation agreement requires compliance with "applicable provisions" of the 1999 tax sharing agreement, we first analyze the city's obligations to the county under that agreement.

### 1. The 1999 Tax Sharing Agreement Applies to Plaintiff's Property

The 1999 tax sharing agreement was in effect from 1999 to 2010, and applied to "all those local agency boundary changes ... occurring during the applicable period of this agreement, where County is the affected county and City is an affected city." Among other things, the agreement requires the city to pay the county the Additional Amount for each single family dwelling unit constructed on "property annexed as residential property within the affected territory." "The Additional Amount owed by the City to County shall accrue at the time City issues a building permit for any structure on a particular parcel of land within the affected territory."

The agreement contains two relevant trigger events: the date residential property is annexed, and the date the city issues a building permit for any structure on a particular parcel. The city becomes liable under the agreement to pay the Additional Amount as of the annexation date; however, the Additional Amount does not come due until the second event occurs—when the city issues a building permit. Because the property at issue here was annexed in 2002 while the 1999 tax sharing agreement was in effect, the city owes the county the Additional Amount for any single family dwelling unit that is ultimately constructed on the property. As the liability was incurred before the agreement expired, it is irrelevant that building permits were not issued until several years later.

8

Plaintiff argues, without citation to relevant authority, that all "obligations under the 1999 [tax sharing agreement] dissolved upon expiration of the agreement."[2] Nothing in the 1999 tax sharing agreement suggests that obligations created by it would cease to exist merely because a project annexed during its effective period was not constructed until after the agreement expired. The fiscal neutrality goal of the 1999 tax sharing agreement would not be served by such an interpretation because it would create an incentive to delay development of annexed property to evade the requirement to pay the Additional Amount. By interpreting the 1999 tax sharing agreement as the trial court did, the county is certain to receive the Additional Amount for residential units constructed on land annexed during the term of the tax sharing agreement even if, as here, construction does not occur until after expiration of the agreement.

Plaintiff points to another provision in the 1999 tax sharing agreement that applies the Additional Amount to land originally annexed for non-residential use that is ultimately developed for residential use within 20 years after the agreement expires. Plaintiff argues the trial court's interpretation "would mean that the City's 'Additional Amount' obligation for land re-designated residential *after* annexation would only be 20 years whereas the City's 'Additional Amount' obligation for annexed residential land would extend indefinitely." But plaintiff focuses on only one triggering event. Although the trigger to *impose* the Additional Amount is extended by 20 years for redesignated land, under both scenarios the trigger for the Additional Amount to *come due* remains the same—i.e., the date the city issues a building permit. There is no inconsistency.

---

[2] The sole case plaintiff cites in its reply brief merely states a general rule about the duration of contracts. (Citing *Beatty Safway Scaffold, Inc. v. Skrable* (1960) 180 Cal.App.2d 650, 654 ["It is the general rule that when a contract specifies the period of its duration, it terminates on the expiration of such period."].)

## 2. Plaintiff Owes the Additional Amount Under the Annexation Agreement

Having determined that the 1999 tax sharing agreement requires the city to pay the county the Additional Amount for each residence developed in the Homestead and Saddlebrook projects, we must now determine whether the annexation agreement requires plaintiff to pay the Additional Amount to the city.

Two conditions in the annexation agreement refer to the 1999 tax sharing agreement. Plaintiff's predecessor Rajkovich agreed under the annexation agreement's first condition to "hold and use the Property in compliance with and subject to all City ordinances, resolutions, and policies, and in compliance with all applicable provisions" of the 1999 tax sharing agreement. The annexation agreement's second condition is more specific: "As a condition of annexation, [Rajkovich] agrees to comply with all applicable provisions of the above-referenced Tax Sharing Agreement including without limitation those provisions relating to Allocations and Payments (section 5), which require, without limitation, payment of a $7,000 residential unit fee for each residential unit developed within the Property." The annexation agreement, which was recorded against the properties plaintiff later purchased, states that its conditions "shall be binding on all of [Rajkovich's] heirs, successors and assigns and shall run with the Property."

Reading the foregoing as a whole, we conclude that plaintiff is liable to the city for the Additional Amount for residences constructed on both the Homestead and Saddlebrook projects. The annexation agreement is binding on all successors to the property, and the second condition of the agreement expressly requires "compl[iance] with all applicable provisions" of the 1999 tax sharing agreement, including "payment of a $7,000 residential unit fee for each residential unit developed within the Property." The amount of that per unit fee is the same as the Additional Amount, and the annexation agreement expressly refers to the corresponding section of the 1999 tax sharing agreement. It is only reasonable to conclude that the obligation referenced in the

10

annexation agreement's second condition is the Additional Amount obligation from the 1999 tax sharing agreement, and plaintiff does not argue otherwise.

Plaintiff's primary argument against applying the plain language of the annexation agreement is that because the 1999 tax sharing agreement had expired before plaintiff applied for any building permits, the Additional Amount requirement was no longer an "applicable provision" under the annexation agreement. As we have already explained, that argument is without merit.

Plaintiff also appears to argue that its Saddlebrook project is not subject to the annexation agreement at all. Noting that the conditions of approval for the Saddlebrook project do not expressly reference the annexation agreement, plaintiff argues the city's "approval of the Saddlebrook Project and Addendum to the Vesting Map superseded and replaced the conditions of approval imposed pursuant to the Vesting Map with respect to the Saddlebrook Project portion of the Property, and imposed brand new conditions of approval and brand new fees." (Bold and italics omitted.) But plaintiff points to nothing in the Saddlebrook conditions that purports to supersede or eliminate plaintiff's obligations under the annexation agreement, nor does plaintiff show that the City Council ever consented to such a modification (as would be required to modify the annexation agreement). To the contrary, the Saddlebrook project conditions are consistent with the continued validity of the annexation agreement. Though the annexation agreement is not incorporated by name, condition No. 40 of the Saddlebrook project conditions requires plaintiff to "pay all fees including all fees required by reimbursable agreements, drainage agreements, improvement plan checking fees and inspection fees as well as any applicable fees pursuant to the Public Works Master plan." Rather than eliminating the annexation agreement, the Saddlebrook approval imposed conditions *in addition* to obligations already in place (including the obligation under the annexation agreement to pay the Additional Amount fees).

11

By entering the annexation agreement, plaintiff's predecessor agreed to pay the Additional Amount described in the 1999 tax sharing agreement. The trial court properly concluded that plaintiff must pay the Additional Amount for each residential unit constructed as part of the Homestead and Saddlebrook projects.

### III.  DISPOSITION

The judgment is affirmed. Each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

_____
Grover, J.

**WE CONCUR:**

_____
Greenwood, P. J.

_____
Danner, J.

**H046707 -** *BMC Promise Way, LLC v. County of San Benito et al.*

Filed 12/1/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BMC PROMISE WAY, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF SAN BENITO et al.,<br><br>    Defendants and Respondents. | H046707<br>(San Benito County<br> Super. Ct. No. CU1500056)<br><br>ORDER RE PUBLICATION |

BY THE COURT:

Pursuant to California Rules of Court, rule 8.1105(b), it is ordered that the opinion in this matter filed on November 1, 2021, shall be certified for publication.


Dated: _____
                                      Greenwood, P. J.


_____
Grover, J.


_____
Danner, J.

| Trial Court: | San Benito Superior Court<br>Case No. CU1500056 |
|---|---|
| Trial Judge: | Hon. Harry J. Tobias |
| Counsel for Plaintiff/Appellant<br>BMC PROMISE WAY | Paige Hopkins Gosney<br> Gresham Savage Nolan & Tilden, PC |
| Counsel for Defendant/Respondent<br>COUNTY OF SAN BENITO | Michael George Colantuono<br>Ryan Thomas Dunn<br> Colantuono, Highsmith & Whatley, PC |
| Counsel for Defendant/Respondent<br>CITY OF HOLLISTER | Jason Stuart Retterer<br> Johnson, Rovella, Retterer, Rosenthal &<br> Gilles, LLP |